[No. A095890. First Dist., Div. Three. Apr. 23, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ERIC J. BOWERS, Defendant and Appellant.

## COUNSEL

Kathleen Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Jamie M. Weyand, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McGUINESS, P. J.**—Eric J. Bowers appeals from the denial of his motion pursuant to Penal Code sections 995 and 1538.5[1] to suppress evidence and to dismiss the information against him. He contends the subject evidence was seized in the course of an unlawful detention pursuant to an otherwise illegal search of his person, which could not be justified as a probation search because the police conducting the search were unaware of his probationary status.

In our prior opinion (*People v. Bowers* (Apr. 30, 2002, A095890) [nonpub. opn.]), relying on the reasoning of *In re Tyrell J.* (1994) 8 Cal.4th 68 [32

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

Cal.Rptr.2d 33, 876 P.2d 519], we concluded that the search was reasonable and justified because appellant was a probationer subject to police search as a condition of his probation, even though at the time of the search in this case the officers were in fact unaware of his probationary status. The California Supreme Court granted review of our decision and held the matter pending its decision in *People v. Sanders* (2003) 31 Cal.4th 318 [2 Cal.Rptr.3d 630, 73 P.3d 496] (*Sanders*). In that case, the Supreme Court declined to apply the reasoning of *Tyrell J.* to an adult parolee in the context of a residential search. After filing its opinion in *Sanders*, the Supreme Court transferred review of this appeal to this court with directions to vacate our previous decision and reconsider the cause in light of *Sanders*. (*People v. Bowers* (Jan. 14, 2004, S107318) [order].) Both appellant and respondent have submitted supplemental briefing, as authorized by California Rules of Court, rules 13(b) and 29.3(f).

■ We conclude in light of *Sanders, supra,* 31 Cal.4th 318, that appellant's probation search condition did not justify the search, because the police officer who conducted the warrantless search was unaware of the condition at the time. We conclude further that whether other circumstances justified the search is a question for the trial court to decide in the first instance. Because that issue has not been fully litigated below, we therefore remand for further proceedings to be held in a new suppression hearing.

FACTUAL AND PROCEDURAL BACKGROUND[2]

The only witness testimony adduced in this matter was given at the preliminary hearing held on May 15, 2001, by Sergeant Dony Gordon of the Contra Costa County Sheriff's Department. Sergeant Gordon testified that at approximately 9:50 p.m. on January 5, 2001, he was working on assignment as "J-Team supervisor" of a stolen vehicle recovery operation called "Operation Blitz." Together with three other officers, Sergeant Gordon was investigating a suspected "chop shop operation" at 4260 Santa Rita Road in El Sobrante.[3] As Sergeant Gordon approached the house at that address, he saw Sheriff's Detective Gifford make contact with appellant and start talking with him. Appellant was standing less than 10 feet from the front door of the house, behind some automobiles in the driveway on the right side of the house. He was not being physically restrained in any way. Although Sergeant Gordon could hear appellant and Detective Gifford conversing, he could not "recall the exact words that were exchanged" between them, or specifically

---

[2] Except as otherwise indicated, the factual statement is taken from the preliminary hearing held on May 15, 2001.

[3] Sergeant Gordon defined a "chop shop operation" as one "which involves individuals removing VIN [vehicle identification numbers] plates from stolen autos and changing them over in an attempt to make them valid."

remember what Detective Gifford said to appellant. Sergeant Gordon testified that aside from himself, he was aware of only one other officer who had contacted appellant, i.e., Detective Gifford; and it was the latter, not Sergeant Gordon himself, who first spoke to appellant.

As Detective Gifford was talking with appellant, Sergeant Gordon heard "some rumbling of unknown origin," apparently coming from "movement" in the upstairs area of the house. It was dark, and Sergeant Gordon could not see appellant's hands. "[C]oncerned," both with what might be transpiring inside the house and with officer safety, Sergeant Gordon asked Detective Gifford "to direct [appellant] . . . back to [his] location," i.e., to move away from the house and toward himself. Appellant came to Sergeant Gordon.[4] As he did so, Sergeant Gordon asked him if he had any weapons in his possession, and requested permission to perform a pat search. In response, appellant raised his hands above his head.

While Detective Gifford "was busy knocking on the [front] door attempting to contact the person inside," Sergeant Gordon conducted a pat search of appellant. As he did so, he felt a hard cylindrical object approximately four inches in length or approximately a hand's width in length. After the Sergeant twice asked him what it was, appellant said it was "a pipe." Removing the object from appellant's pocket, Sergeant Gordon recognized it as a "[g]lass-type style pipe" used to ingest cocaine base or methamphetamine. Sergeant Gordon placed appellant under arrest, proceeded to search him, and recovered two baggies containing an "off-white chalky substance." Subsequent testing confirmed the baggies contained 1.2 grams of methamphetamine.

At the time of Sergeant Gordon's pat search of appellant, the latter was on probation. Among the other conditions to which appellant had agreed, the probation order required him to submit his person to search and seizure at any time of day or night, with or without warrant, by any peace officer.

At the preliminary hearing following his arrest and arraignment, appellant moved to suppress the evidence on the grounds that he had been unlawfully detained, and there was no evidence the officers knew appellant was subject to a probationary search condition. Over appellant's objection, the magistrate judicially noticed the 1999 probation order subjecting appellant to warrantless search and seizure. Noting that "Sergeant Gordon really didn't have any knowledge of what Detective Gifford told [appellant]," and the entire record on that subject was "just too ambiguous" to establish consent by appellant or

---

[4] Sergeant Gordon testified that he said to Detective Gifford, "[s]end him over here, or something to that effect," referring to appellant; and then signaled with a wave or hand gesture for appellant to come towards him. Sergeant Gordon testified he could not recall Detective Gifford's "exact words" to appellant, but "whatever he said, [appellant] came towards me."

reasonable suspicion on the part of the officers, the magistrate found the prosecution had failed to bear its burden of establishing that appellant's encounter with the officers was a consensual exchange or a legally justified detention. Although the magistrate did make a specific factual finding that appellant had consented to the pat search by Sergeant Gordon, she concluded that this consent was probably vitiated by a lack of reasonable suspicion to support the legality of appellant's detention.[5] The magistrate nevertheless found it unnecessary to base its ruling on that issue, because appellant's probationary search condition was "dispositive" and independently validated the officers' search of appellant's person regardless of their lack of knowledge of his probationary status at the time. On that basis, the magistrate denied appellant's motion to suppress.[6]

---

[5] In pertinent part, the magistrate found as follows:

"Let me start with some specific findings of fact. I find that the testimony of the officer would be credible and accept it for purposes of findings of fact in this proceeding. Taking this step-by-step, the first question would be was this a consensual encounter or a temporary detention. And I think that there is not enough evidence to find that there was a consensual encounter because Sergeant Gordon really didn't have any knowledge of what Detective Gifford told him, told [appellant] in terms of moving from one location to the other.

"And I would think that it's the People's burden to justify the search and seizure so that there's not enough evidence here for me to conclude that this was asked of [appellant], and that he consented as opposed to [appellant] being directed. There are other indicators that suggest that [appellant] was directed, but I think that the record is just too ambiguous and I would count this against the People.

"With regard to then proceeding on the analysis that this is a detention, is there reasonable suspicion for it, and, again, I really don't think so. They had just—it was part of an investigation. There is nothing about [appellant], there is nothing connecting him to the location. I don't see any reason to detain [appellant] in the record.

"The next issue is was the pat down justifiable, and I would say that there is evidence that I find credible that the pat down was consented to, and I would make that specific finding of fact based on the testimony of Sergeant Gordon. I think that there wasn't specific and articulable grounds to believe that [appellant] was armed and dangerous, but the consent vitiates the lack of that evidentiary showing."

[6] After the magistrate had ruled that appellant's detention and search were justified by his probationary status and the search condition of his probation, defense counsel pressed the magistrate to clarify the twin findings that appellant had been detained without reasonable suspicion and that he had consented to the pat search. The following colloquy took place:

"MS. LIPETZKY [defense counsel]: When you were making your rulings you said that you were finding that there was no lawful basis for detention and that there was a detention. Is that correct?

"THE COURT: Yes, ma'am.

"MS. LIPETZKY: Okay. But you also found that the pat search was consented to. If we set aside—I mean, taking out of the equation for the moment the search clause, and I understand you're ruling on that point and obviously I disagree with it, but I understand your ruling. [¶] But if that were not part of the equation, would you then be finding that because the consent to search was given directly after the unlawful detention, that that consent for the pat down would be a fruit of the unlawful detention?

"THE COURT: To tell you the truth that's my gut reaction. But I haven't looked at that question because I went through to make these facts as I saw them. It's late in the day. I

Following the preliminary hearing, appellant was charged by information with possession of methamphetamine in violation of Health and Safety Code section 11377, subdivision (a), with an additional allegation that by possessing methamphetamine appellant was in violation of the terms of his probation. Appellant moved pursuant to sections 1538.5 and 995 to suppress the evidence and dismiss the information, on the grounds the evidence was seized during an illegal search that could not be justified by a probationary search condition of which the police were unaware at the time. In response, the prosecution relied on *In re Tyrell J., supra*, 8 Cal.4th 68 to argue that because of his probationary status, appellant did not have a reasonable expectation of privacy and the search was constitutional regardless of whether the officer was aware appellant was on probation, so long as the search was not conducted "in an arbitrary, capricious, or harassing manner."

Expressly declining to decide whether the magistrate erred in its ruling on the legality of appellant's detention, the trial court ruled the search was justified by the fact appellant was on probation, and the lack of any showing that the officers' actions were arbitrary, capricious or harassing. On that basis, the trial court denied appellant's motions to suppress and dismiss.[7] Appellant thereupon pled no contest to possession of methamphetamine. He was placed on probation for three years with his prior probation deemed unsuccessfully terminated. This timely appeal followed.

---

decided that the probation issue was going to be dispositive. [¶] I made those findings because I thought that the record was ambiguous, and I wanted to note specifically with regards to the encounter that the People have failed to meet their burden. I think that there's enough there in terms of findings of fact that it would be a legal call anyway if it goes up on review, and they could make the call.

"MS. LIPETZKY: Would you make the factual finding that the pat search occurred immediately after?

"THE COURT: In terms of chronology, yes, the pat search occurred after the—what I think is [an] illegal detention.

"MS. LIPETZKY: Or contemporaneous with it.

"THE COURT: I think the detention started first and there was a pat search during the illegal detention.

"MS. LIPETZKY: Okay. Thank you.

"THE COURT: In terms of findings of fact I'm comfortable with that."

[7] Relying on the transcript of the preliminary hearing, and without taking any additional evidence, the trial court ruled as follows: "All right. First off, I'm not going to get to the issue of whether or not the magistrate erred in ruling that there was a lawful [*sic*] detention here. I think that the search is justified by the fact [appellant] is on probation. There is no showing in the record that there was any—that there was any harassment or that it was capricious or arbitrary on the part of the law enforcement officers in this case, and that's the standard that we have in this state now. And it may change. [¶] . . . [¶] In any event, I'm going to deny the motion at this point."

## DISCUSSION

The sole question on this appeal is whether the trial court erred in denying appellant's motion to suppress. In briefing submitted pursuant to rules 13(b) and 29.3(f) of the California Rules of Court, after the Supreme Court's transfer of this cause to us for reconsideration in light of its recent decision in *Sanders, supra,* 31 Cal.4th 318, appellant argues that the search of his person could not be justified as a probation search in the absence of any evidence the police officer who conducted the search was aware of his probationary status. Respondent disputes the applicability of *Sanders*, contending that case is factually distinguishable and inapplicable here because—unlike the personal search of a probationer at issue in this case—*Sanders* concerned a *residential* search involving a *parolee*. In so contending, respondent assumes the continuing validity and authority of *Tyrell J., supra,* 8 Cal.4th 68, the case upon which the trial court relied in denying the motion to suppress, and which this court cited in our previous decision upholding that denial.

Respondent is correct in asserting that the Supreme Court did not expressly overrule *Tyrell J.* in its opinion in *Sanders*. Nevertheless, the Supreme Court specifically identified the fact *Tyrell J.* involved a *juvenile* offender as its reason for declining to decide the continuing validity of that case. In so doing, the Supreme Court implicitly suggested that the inherent distinction between the procedures used in the adult criminal system and "the special needs" of the system applied to juvenile offenders was the *only* basis for distinguishing *Tyrell J.* from the more general holding in *Sanders*. (*Sanders, supra,* 31 Cal.4th at pp. 327, 335, fn. 5, and pp. 337–338 (conc. opn. of Kennard, J.).)[8]

---

[8] "The court in *Tyrell J.* also relied upon the circumstance that the suspect in that case was a juvenile, observing that 'imposing a strict requirement that the searching officer must always have advance knowledge of the search condition would be inconsistent with the special needs of the juvenile probation scheme. That scheme embraces a goal of rehabilitating youngsters who have transgressed the law, a goal that is arguably stronger than in the adult context.' (*In re Tyrell J., supra,* 8 Cal.4th 68, 86–87.)" (*Sanders, supra,* 31 Cal.4th at p. 327.)

"In its amicus curiae brief, the California District Attorneys Association argues that the holding in *Tyrell J.* was correct because 'The Special Needs of the Juvenile Probation Scheme Emanating from the Doctrine of *Parens Patriae* Allows a Juvenile Probationer Only a Residual Right to be Free from Arbitrary, Capricious and Harassing Searches.' Because this case does not involve a juvenile, we need not, and do not, decide this issue." (*Sanders, supra,* 31 Cal.4th at p. 335, fn. 5.)

In her concurring opinion, Justice Kennard stated: "Left open by the majority here is the continuing vitality of the majority opinion in *Tyrell J.*, which upheld an officer's warrantless search of a minor based upon the minor's probation search condition of which the officer conducting the search was unaware. . . . [¶] I would draw no distinction between the warrantless search of an adult parolee and the warrantless search of a juvenile probationer. As to each, I would apply the same analysis: Neither search can later be justified by information

In every other respect, the Supreme Court's discussion of *Tyrell J.* throughout *Sanders* was clearly disapproving. Indeed, the Supreme Court specifically noted that "[o]ur holding in *Tyrell J.* that police could justify a search based upon the existence of a search condition of which they were unaware, received a chilly reception" from legal commentators. (*Sanders, supra,* 31 Cal.4th at pp. 328–329.) The *Sanders* court expressly rejected the notion that it is irrelevant whether police have contemporaneous awareness of a search condition. Instead, the court repeatedly emphasized that its holding "flows from the rule that whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted." (*Sanders, supra,* 31 Cal.4th at pp. 332, 334.) We conclude that the controlling distinction between *Tyrell J.* and *Sanders,* if any, was the fact *Tyrell J.* involved a juvenile offender.

█ Although *Sanders* dealt with the search of an adult *parolee* subject to a search condition, its core reasoning applies with equal force to the search of an adult *probationer* such as appellant. The *Sanders* court based its holding on the rationale that the Fourth Amendment is best protected by " ' "removing the incentive to disregard it." ' " (*Sanders, supra,* 31 Cal.4th at p. 334.)[9] We are not persuaded that this rationale applies only to parolees and not to probationers. Indeed, in its analysis the Supreme Court did not make any distinction between parolees subject to search conditions and probationers with similar search conditions. (*Id.* at p. 333.)[10] As the Supreme Court specifically emphasized, in either case "whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted." (*Id.* at p. 332.) For this reason, an officer performing a search without knowledge that a suspect is either a parolee or a probationer is not acting pursuant to *any* applicable search conditions.

such as the search condition in this case that was unknown to the searching officer." (*Sanders, supra,* 31 Cal.4th at p. 337–338 (conc. opn. of Kennard, J.).)

[9] "The requirement that the reasonableness of a search must be determined from the circumstances known to the officer when the search is conducted is consistent with the primary purpose of the exclusionary rule—to deter police misconduct. The rule serves ' "to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." ' [Citation.]" (*Sanders, supra,* 31 Cal.4th at p. 334.)

[10] In discussing its reasoning in prior cases involving parolees such as *People v. Reyes* (1998) 19 Cal.4th 743, 753–754 [80 Cal.Rptr.2d 734, 968 P.2d 445], the Supreme Court stated: "[I]f the officer is unaware that the suspect is on parole and subject to a search condition . . . a search cannot be justified as a parole search, because the officer is not acting pursuant to the conditions of parole." (*Sanders, supra,* 31 Cal.4th at p. 333.)

The Supreme Court used almost identical language in analyzing the United States Supreme Court's decision in *United States v. Knights* (2001) 534 U.S. 112 [151 L.Ed.2d 497, 122 S.Ct. 587], involving a police search of a probationer subject to a similar search condition: "[I]f an officer is unaware that a suspect is on probation and subject to a search condition, the search is not justified by the state's interest in supervising probationers or by the concern that probationers are more likely to commit criminal acts." (*Sanders, supra,* 31 Cal.4th at p. 333.)

Therefore, in neither case can the search be justified by those search conditions, whether they derive from parole or probation. (*Id.* at p. 333.)

■ We are unpersuaded by respondent's argument that the search in this case may be justified by appellant's probationary search condition because, unlike the parolee in *Sanders*, appellant had the right to refuse his search condition by refusing probation. According to this analysis, by accepting his probation appellant consented to the concomitant search condition and thereby relinquished whatever claim to privacy he might otherwise have had. In our opinion, this rationale does not survive the Supreme Court's opinion in *Sanders*, which was clearly based on the premise that *any* justification for a police search must be based on facts *known* to the police *before* the search is conducted. (*Sanders, supra,* 31 Cal.4th at p. 332 ["whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted"].) In accordance with the reasoning of the *Sanders* court, the constitutionality of the search turns on the factual circumstances known to the officer at the time, not the suspect's implied consent to his probationary search condition.

■ Contrary to respondent's contention, the rationale of *Sanders* similarly applies as strongly to an unlawful personal search of an individual on a public street as to an unlawful search of a residence. The Fourth Amendment applies as much to the protection of "persons" against unreasonable search and seizure as it does to residences. *Sanders'* concern is with preventing officers from executing searches without having contemporaneous knowledge of the circumstances justifying such a search. That concern applies equally to both personal and residential searches. (See *United States v. Calandra* (1974) 414 U.S. 338, 347 [38 L.Ed.2d 561, 94 S.Ct. 613] ["The exclusionary rule was adopted to effectuate the Fourth Amendment right of all citizens 'to be secure in their *persons*, houses, papers, and effects, against unreasonable searches and seizures' " (italics added)]; *Terry v. Ohio* (1968) 392 U.S. 1, 16–17 [20 L.Ed.2d 889, 88 S.Ct. 1868] ["[I]t is simply fantastic to urge that such a [stop and frisk] procedure performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a 'petty indignity.' It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly"].) From this, we infer that the Supreme Court's disapproval in *Sanders* of retroactive justification of a warrantless search of a residence due to a suspect's search condition, of which the searching officers were unaware at the time, applies as well to a similarly unlawful warrantless search of a suspect's actual person.

Applying *Sanders* to the instant case, it is undisputed that the officers were themselves unaware of appellant's probationary status at the time of the

search. Because Sergeant Gordon acted without knowledge of appellant's search condition, he was not acting pursuant to the conditions of appellant's probation. Hence, the search of appellant's person cannot be retrospectively justified as a probation search just because of the happenstance that he was on probation at the time. (Cf. *Sanders, supra,* 31 Cal.4th at pp. 333, 335 [search by officer unaware suspect is on parole and subject to search condition "cannot be justified as a parole search"].)

■ This does not end our inquiry, however. As the Supreme Court was careful to state in *Sanders,* a search of a person subject to a search condition by an officer unaware of that search condition violates the suspect's Fourth Amendment rights only if the search is "otherwise unlawful." (*Sanders, supra,* 31 Cal.4th at p. 335.) Accordingly, the issue before us becomes not whether appellant's probationary status justified the search—under the circumstances, it could not—but whether the search was lawful regardless of appellant's probationary status. In other words, the question remains whether the search in this case was "otherwise unlawful."

■ Because the power to judge the credibility of witnesses, resolve conflicts in testimony, weigh evidence, and draw factual inferences is vested in the trial court, on appeal all presumptions favor the trial court's proper exercise of that power. (*People v. Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221]; *People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].) On the other hand, appellate deference is not extended to the selection of the relevant legal principles or their application to the facts as found. In applying the constitutional standard of reasonableness to the facts as determined by the trial court, we exercise our own judgment under the standard of independent review to determine if the search was proper as a matter of law. (*Williams, supra,* 45 Cal.3d at p. 1301; *People v. Leyba* (1981) 29 Cal.3d 591, 596–597 [174 Cal.Rptr. 867, 629 P.2d 961].)

On the record before us, we cannot make that determination. The evidence is simply inadequate to enable us to determine, based on the state of the law after *Sanders,* whether the trial court's ruling is sustainable on the rationale that the search was lawful. As seen, the only testimony offered on the nature of appellant's encounter with the officers was that of Sergeant Gordon, who could do no more than testify that he saw appellant talking with the other officer. Sergeant Gordon first saw appellant as the latter was encountered by Detective Gifford, or shortly thereafter; he was not able to hear or recall what Detective Gifford said to appellant, and clearly could not testify to the nature of the encounter between appellant and Detective Gifford. The prosecution

did not offer Detective Gifford to testify about the circumstances of his initial contact with appellant. There was a notable absence of any evidence regarding a number of other important issues as well. Among other things, there was no testimony regarding the factual or evidentiary basis for the officers' belief that the house under investigation was a "chop shop," or that anyone in the house had committed or was in the process of committing a crime.

On this record, it is impossible to determine whether this initial contact constituted a detention or a consensual encounter. (Cf. *Florida v. Bostick* (1991) 501 U.S. 429, 434 [115 L.Ed.2d 389, 111 S.Ct. 2382] [only when officer uses physical force or show of authority in some way to restrain subject's liberty does a seizure occur]; *United States v. Mendenhall* (1980) 446 U.S. 544, 555 [64 L.Ed.2d 497, 100 S.Ct. 1870] [police did not effect a seizure or intrude upon any constitutionally protected interest simply by approaching suspect, asking if she would show them her ticket and identification, and asking a few questions]; *In re Manuel G.* (1997) 16 Cal.4th 805, 821 [66 Cal.Rptr.2d 701, 941 P.2d 880] [consensual encounters do not require articulable suspicion that a person has committed or is about to commit a crime]; *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790 [195 Cal.Rptr. 671, 670 P.2d 325] [officer did not detain suspect "merely by approaching him, identifying himself as a police officer, and asking if he might have a minute of his time"]; *People v. Bouser* (1994) 26 Cal.App.4th 1280, 1282, 1287–1288 [32 Cal.Rptr.2d 163] [asking questions, requesting identification and running warrant check does not amount to a Fourth Amendment intrusion]; *People v. Gonzales* (1985) 164 Cal.App.3d 1194, 1197 [211 Cal.Rptr. 74] [police officer asking suspect for driver's license and written or verbal identification did not constitute a seizure].) Neither was there a sufficient record on which to base a determination as to whether the brief detention of appellant was justified by a concern for officer safety or on other grounds. (Cf. *People v. Glaser* (1995) 11 Cal.4th 354, 360–361, 372–373 [45 Cal.Rptr.2d 425, 902 P.2d 729] [police detained defendant as he attempted to approach a private residence while it was under investigation; brief detention and search justified both by need to determine defendant's connection to premises and by concern for officer safety].)

The magistrate at the preliminary hearing found the record too "ambiguous" and incomplete to support the prosecution's contention that the encounter between appellant and the officers was either consensual or justified by reasonable suspicion. Rather than basing its decision on a close examination of whether appellant had been unlawfully detained, the magistrate instead relied on *Tyrell J.* to conclude that Sergeant Gordon's search of appellant was reasonable and justified by the fact appellant was a probationer subject to a

search and seizure condition, even though the officer was unaware of that status at the time of the search. It was *this* conclusion that was affirmed by the trial court, not any determination on the legality of appellant's detention.

In short, the issue of the lawfulness of the search of appellant, irrespective of his probationary status, has not been fully litigated. We consequently lack an adequate evidentiary record on which to decide whether the search in this case was lawful on any theory aside from that upon which both the magistrate and the trial court decided it below, which theory has since been barred by *Sanders*. The trial court in the first instance should hear the evidence, make factual findings, and decide whether the officers' encounter with appellant was consensual or constituted a detention; if the latter, whether the detention was legally justified; and whether the subsequent search was justified by appellant's consent, exigent circumstances, or on some other basis. (*People v. LeBlanc* (1997) 60 Cal.App.4th 157, 167–170 [70 Cal.Rptr.2d 195].)

We therefore reverse the judgment and remand the cause to the trial court to hear the evidence and make the necessary factual determinations at a new hearing on appellant's suppression motion. If the court determines that the search was justified, it should deny the motion to suppress and reinstate the original judgment. On the other hand, if the court determines that the search was not justified, it should grant the motion to suppress and conduct further proceedings as appropriate, consistent with this decision. (§ 1260; *People v. LeBlanc, supra,* 60 Cal.App.4th at pp. 167–170; *People v. Clower* (1993) 16 Cal.App.4th 1737, 1743 [21 Cal.Rptr.2d 38]; *People v. Torres* (1992) 6 Cal.App.4th 1324, 1335 [8 Cal.Rptr.2d 332]; *People v. Williams* (1992) 3 Cal.App.4th 1535, 1543 [5 Cal.Rptr.2d 372]; *People v. Minor* (1980) 104 Cal.App.3d 194, 199 [163 Cal.Rptr. 501].)[11]

---

[11] "In its disposition of a criminal case the appellate court is not limited to the more common options of affirmance, reversal or modification of the judgment or order appealed from. The court 'may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances' [citation]." (*People v. Minor, supra,* 104 Cal.App.3d at p. 199.)

## DISPOSITION

Our prior opinion in this cause filed on April 30, 2002, is vacated. The judgment is reversed and the matter remanded to the superior court with directions to vacate its order denying the motion to suppress and to conduct a new evidentiary suppression hearing consistent with this opinion, in order to determine whether the officers' contact with appellant constituted a consensual encounter or a detention; and, if the latter, whether the detention was legally justified. Based on the evidence adduced in the new suppression hearing, the trial court shall enter a new order granting or denying the motion to suppress. If the superior court grants the motion to suppress, it shall vacate the judgment and afford appellant an opportunity to withdraw his plea. If the superior court denies the motion to suppress, it shall reinstate the judgment.

Parrilli, J., and Pollak, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 11, 2004. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.