Filed 10/5/15

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


|   |   |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC WOLFGANG,<br><br>    Defendant and Appellant. | E059661<br><br>(Super.Ct.Nos. INF028639 &<br> INF1200741)<br><br>OPINION |


APPEAL from the Superior Court of Riverside County. Victoria E. Cameron and James S. Hawkins, Judges. Affirmed.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

In case No. INF1200741, a jury found defendant and appellant Eric Wolfgang guilty of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1))[1] and possession of ammunition by a felon (§ 30305, subd. (a)(1)).[2] Defendant was thereafter sentenced to a total term of one year four months in state prison with credit for time served. In case No. INF028639, the trial court revoked defendant's probation and sentenced defendant to three years in state prison with credit for time served to run concurrently with his sentence in case No. INF1200741. Defendant's sole contention on appeal is that the trial court erred in denying his suppression motion in case No. INF1200741. We reject this contention and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant filed a motion to suppress the rifle found in his bedroom, claiming the search was not a valid probation search. The People filed an opposition, asserting that the probation search of defendant's residence was valid because the officer had confirmed with dispatch defendant was on probation and that the officer acted in good faith.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] The jury was unable to reach a verdict on the charge of possession of stolen property (§ 496d, subd. (a)). The trial court ultimately declared a mistrial as to that offense, and it was later dismissed by the People.

[3] The factual background is taken from the suppression hearing.

At the suppression hearing, Riverside County Sheriff's Deputy Adan Yamaguchi testified that on March 26, 2012, he was dispatched to a modular home located in Thousand Palms at approximately 2:30 p.m. on a "suspicious activity call." Upon arrival, he saw a large pipe on a trailer parked on the property. Deputy Yamaguchi contacted dispatch with the license plate number of the trailer and was informed the trailer had been reported stolen.

Deputy Yamaguchi knocked on the door of the modular home on the property. Defendant answered the door and provided the deputy with his driver's license. Deputy Yamaguchi ran defendant's name through dispatch and was advised that defendant was on probation for brandishing a weapon. Deputy Yamaguchi did not ask dispatch and was not told whether defendant's probation included a search condition. Deputy Yamaguchi explained that, based on his training and experience as a 10-year veteran of law enforcement, generally when a person is on probation for a weapons violation, they have search conditions. In fact, Deputy Yamaguchi had never encountered an individual on probation for a weapons violation who was not subject to some type of search condition. The deputy further indicated that, in his experience, law enforcement officers are not given, and do not obtain, specific terms and conditions of the probation when officers are checking the individual through dispatch.

Deputy Yamaguchi thereafter conducted a probation compliance search of defendant's home and discovered a loaded .22-caliber rifle on defendant's bed. When asked why he had conducted a probation compliance search at that time, Deputy

3

Yamaguchi explained, "Well, because he had that stolen trailer. He was on probation. And to further investigate whether he had any other items of evidence."

Later, Deputy Yamaguchi learned that, at the time of the search, defendant was no longer on probation for the brandishing a weapon conviction. Defendant's probation for that offense had ended on March 1, 2012, about one month prior to the search of his residence. Defendant, however, was on probation at the time of the search for a felony case, case No. INF028639, which contained search terms. Deputy Yamaguchi acknowledged that at the time he entered defendant's home to conduct the probation search, he did not know any specific terms and conditions of defendant's probation and that law enforcement officers do not directly contact the court to find an individual's specific terms and conditions.

Defendant's counsel argued that the rifle found inside his home should be suppressed because the deputy did not know for certain that defendant had a search condition prior to conducting the warrantless search. Counsel further argued that when an officer conducting a warrantless probation search does not have actual knowledge of a defendant's search condition at the time of the search, the search is presumptively unreasonable. The prosecutor responded that the deputy's search was a valid probation search because the deputy had confirmed with dispatch that defendant was on probation for brandishing a weapon, a violation that normally includes a search condition. The prosecutor further asserted that the deputy did not specifically need to know the probationary terms and conditions and that the deputy had a good faith belief, based on

4

information given from dispatch, that defendant was on probation for a weapons violation.

Following further argument and after analyzing the relevant case law, the trial court denied defendant's suppression motion. The court found that although dispatch had wrongly informed Deputy Yamaguchi that defendant was on probation for brandishing a weapon, defendant was in fact on probation with search terms for an unrelated felony case; that Deputy Yamaguchi had "acted completely in good faith" based upon information from dispatch defendant was on probation for a weapons violation; and that it is common policy and procedure that probation cases include search terms.

II

DISCUSSION

Defendant contends the trial court erred in denying his suppression motion because Deputy Yamaguchi presumed, but did not know for certain at the time of the search, that defendant was subject to a search condition. Defendant also argues that the "good faith exception" is irrelevant under the circumstances of this case and is inapplicable to mistakes by law enforcement.

In evaluating a trial court's ruling on a motion to suppress, we defer to the trial court's factual findings, express or implied, if supported by substantial evidence. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.) We then exercise our independent judgment in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment of the United States Constitution. (*Ibid.*)

5

It is the exclusive province of the trial court to make the factual findings and credibility determinations that support a ruling and the legal theory underlying it. (*People v. Hoeninghaus* (2004) 120 Cal.App.4th 1180, 1197-1198 (*Hoeninghaus*); *People v. Ratliff* (1986) 41 Cal.3d 675, 686.)

"In California, a person may validly consent in advance to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term. [Citations.] Warrantless searches are justified in the probation context because they aid in deterring further offenses by the probationer and in monitoring compliance with the terms of probation. [Citations.] By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers. [Citation.]" (*People v. Robles* (2000) 23 Cal.4th 789, 795 (*Robles*).) A probationer who accepts a warrantless search condition voluntarily waives his or her right to privacy, except for the right to object to harassment or object to searches conducted in an unreasonable manner. (*People v. Bravo* (1987) 43 Cal.3d 600, 607 (*Bravo*).) This search condition permits officers to search the probationer's residence without a warrant and without reasonable cause. (*People v. Woods* (1999) 21 Cal.4th 668, 675; *Bravo*, *supra*, at pp. 610-611.) A probation search "is not unreasonable unless it exceeds the scope of the consent." (*Bravo*, *supra*, 43 Cal.3d at p. 609.) The terms of the probation search condition manifest the scope of consent and therefore define the parameters of a consent search. (*Hoeninghaus*, *supra*, 120 Cal.App.4th at p. 1194.)

An officer who is aware of the search condition "may act reasonably in conducting a [probation] search even in the absence of a particularized suspicion of criminal activity, and such a search does not violate any expectation of privacy of the [probationer]." (*People v. Sanders* (2003) 31 Cal.4th 318, 333 (*Sanders*).)  The validity of a probation search does not turn on the "actual motivations of the individual officers." (*Wren v. United States* (1996) 517 U.S. 806; *Sanders*, *supra*, 31 Cal.4th at p. 334; *People v. Woods*, *supra*, 21 Cal.4th at pp. 678-680.)  The reasonableness of the search "must be determined based upon the circumstances known to the officer when the search is conducted. . . ." (*Sanders*, *supra*, 31 Cal.4th at p. 334.)

It is now settled that an officer must have advance knowledge about an individual's probation or parole search conditions at the time such a search is conducted. (*Robles*, *supra*, 23 Cal.4th at pp. 793, 797-798 ["a search of a particular residence cannot be 'reasonably related' to a probationary purpose when the officers involved do not even know of a probationer who is sufficiently connected to the residence"]; *Sanders*, *supra*, 31 Cal.4th at pp. 333, 335 ["if an officer is unaware that a suspect is on probation and subject to a search condition, the search is not justified by the state's interest in supervising probationers or by the concern that probationers are more likely to commit criminal acts"; similarly, "search of the residence of an adult parolee may not be justified by the circumstance that the suspect was subject to a search condition of which the law enforcement officers were unaware when the search was conducted"]; *In re Jaime P.* (2006) 40 Cal.4th 128, 130, 139 [overruling *In re Tyrell J.* (1994) 8 Cal.4th 68 with

7

respect to its conclusion that the law enforcement officer conducting a probation search of a juvenile need not know of the search condition]; *Hoeninghaus*, *supra*, 120 Cal.App.4th at p. 1189 ["it is an officer's knowledge of a search condition that transforms what would otherwise be a presumptively unreasonable warrantless search into a probation search and thus valid as an exception to the warrant requirement" (italics omitted)].)  An otherwise unlawful search of the residence of a probationer "may not be justified by the circumstance that the suspect was subject to a search condition of which the law enforcement officers were unaware when the search was conducted."  (*Sanders*, *supra*, 31 Cal.4th at p. 335, fn. omitted.)

In *Hoeninghaus*, *supra*, 120 Cal.App.4th 1180, the court concluded the probationer's advance consent could not be used as an after-the-fact justification for a search unrelated to defendant's probation.  *Hoeninghaus* explained, "when police are unaware of the condition, they cannot know that a probationer has given advance consent and therefore cannot claim to be conducting a probation or consent search.  Thus, a warrantless search of a probationer cannot be upheld under the consent exception if police are unaware that the probationer gave advance consent to the search.  Our analysis simply follows the logic and governing rule, explained in *Sanders*, that the reasonableness of a warrantless search must be determined from what police know at the time of the search."  (*Hoeninghaus*, *supra*, 120 Cal.App.4th at pp. 1194-1195; see *People v. Bowers* (2004) 117 Cal.App.4th 1261, 1270 ["In accordance with the reasoning of the *Sanders* court, the constitutionality of the search turns on the factual circumstances

8

known to the officer at the time, not the suspect's implied consent to his probationary search condition"]; *People v. Lazalde* (2004) 120 Cal.App.4th 858, 864 [considering *Bravo* and *Sanders* together, "the distinction between a parole search condition and a probation search condition becomes irrelevant, and the logical, unremarkable proposition emerges that a search is not justifiable as a consent search when the officer is not undertaking the search pursuant to that consent"].)[4]

Here, the issue is whether the search may be justified by defendant's advance consent when the officer conducting the search *was* aware at the time of the search of defendant's probation status and actually believed defendant had a search condition. At the time of the search, the deputy was advised by dispatch that defendant was on probation for brandishing a weapon. And, although the deputy did not ask dispatch and was not told whether defendant's probation included a search condition, the deputy, based on his training and experience, was aware that search conditions are part of probationary terms for an individual placed on probation for weapons violations. In fact, the deputy testified that he had never encountered an individual on probation for a weapons violation who was not subject to some type of search condition. The deputy later learned that defendant, at the time of the search, was no longer on probation for

---

[4] Our high court recognized no distinction between parolees and probationers in *People v. Ramos* (2004) 34 Cal.4th 494, 505, fn. 3. The court applied *Sanders'* advance knowledge requirement to a probation search, but rejected the defendant's Fourth Amendment claim because officers conducting the search were aware the defendant was on probation and subject to a search condition.

brandishing a weapon but that defendant was on probation for a felony case with search terms. However, at the time of the search, the deputy was advised defendant was on probation for brandishing a weapon. The deputy was also aware, based on his training and experience, that weapons violations include search terms.

*People v. Hill* (2004) 118 Cal.App.4th 1344 is instructive. In that case, the defendant and his girlfriend were suspects in a burglary. Police located the girlfriend's car in the parking lot of a motel, went to her room and asked her for permission to search it. She refused. (*Id*. at pp. 1347-1348.) The police officer could see that the defendant was in the room and asked to speak with him. The defendant came outside to speak with the officer. In the meantime, the officer had radioed the police dispatcher and asked whether the defendant or his girlfriend were on probation. The dispatcher erroneously told the officer no. While waiting for a detective to arrive to write a search warrant, the dispatcher called the officer again and this time erroneously told him that defendant was on active parole. "Apparently, the dispatcher misread the printout." (*Id*. at p. 1348.) Relying on the misreport of the defendant's parole status, the officer searched the motel room and found property stolen in the burglary. Two days later, the officer found out that the defendant's parole had expired, but that he was on probation with a search clause. (*Ibid*.)

On these facts, the *Hill* court found *Sanders* distinguishable and declined to suppress the evidence against the defendant, reasoning as follows. "In examining the 'totality of the circumstances,' the *Sanders* court identified the 'salient circumstances' before it to be McDaniel's parole search condition and the officer's ignorance of that condition. [Citation.] By contrast, the 'salient circumstances' here are more complex. [The officer's] conduct was not that of an officer unlawfully invading a residence, and then seeking to justify his conduct by a belatedly discovered search condition. [The officer] took all the proper steps to ensure that his search of the motel room was lawful. He first asked for consent. When refused, [he] contacted the dispatcher to determine if defendant or Gregory was on probation. Defendant was indeed on probation, but, for unexplained reasons, the dispatcher reported to the contrary. [The officer] then dutifully began the process of securing a search warrant. As he waited for the warrant to be prepared and approved, the dispatcher contacted [the officer] with more misinformation. This time the dispatcher erroneously informed him that defendant was on parole. Only then did [the officer] enter and search the room. [¶] We are mindful that erroneous parole status information will not validate an otherwise unlawful search. '[T]he good faith exception does not apply where law enforcement is collectively at fault for an inaccurate record that results in an unconstitutional search.' (*People v. Willis* (2002) 28 Cal.4th 22, 49.) . . . [¶] Under the 'collective knowledge principle' discussed in *Willis*, the evidence would have been excluded if defendant's erroneously reported parole status had been the only basis for the search. In examining the totality of the circumstances,

11

however, we cannot turn a blind eye to the undisputed fact that defendant was actually on probation and consented to a search condition. But for the dispatcher's misinformation to the contrary, [the officer] would have searched defendant's motel room on the basis of that valid search condition. [¶] While *Sanders* precludes an officer from justifying a search by later-acquired knowledge of the suspect's parole status, the circumstances of defendant's search represent a variation on that theme. For example, if the dispatcher had misspoken at the outset, incorrectly stating that defendant was on parole when in fact he was on probation, suppression of the evidence would serve no deterrent purpose. In such a situation, the dispatcher's error would produce 'no impingement on Fourth Amendment rights.' [Citation.] Nor would ' "judicial integrity" ' be impugned in upholding the search. (See *Sanders*, *supra*, 31 Cal.4th at p. 334.) While the exclusionary rule exists to safeguard Fourth Amendment rights, it should not devolve into a game, the outcome of which depends on a terminological discrepancy. [¶] Here, the officer believed he was conducting a parole search when in fact defendant was on probation and had waived his Fourth Amendment privacy rights, except for freedom from arbitrary or harassing searches. Applying the same 'totality of the circumstances' test employed by the *Sanders* court, we cannot conclude that the exclusionary rule dictates suppression of the evidence. The exclusionary rule serves ' "to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." ' [Citation.] Nothing in this officer's conduct manifests any such disregard. [The officer's] actions do not present us with the danger of 'legitimiz[ing] unlawful police misconduct.' (*Sanders*,

*supra*, 31 Cal.4th at p. 335.)  To punish the responsible officer and the inept dispatcher in these circumstances creates a windfall for the defendant who was legitimately subject to a search condition." (*People v. Hill*, *supra*, 118 Cal.App.4th at pp. 1349-1351.)

We think the *Hill* court's approach to the problem of applying *Sanders* to a mix-up situation is relevant here.  Application of the exclusionary rule to the facts here would not serve a deterrent purpose, nor would upholding the search impugn judicial integrity.  Here, the dispatcher advised the deputy that defendant was on probation for brandishing a weapon.  The deputy, based on his training and experience, was aware that individuals placed on probation for weapons violations are subject to search conditions.  The dispatcher's information with the deputy's awareness was sufficient to convey to the deputy in the field that defendant was searchable.  And, in fact, defendant was on probation for a felony case, and searchable.  The mistake here was the dispatcher's misspoken word.  Under the totality of these circumstances, we cannot conclude that the dispatcher and the deputy were collectively at fault for an inaccurate record that resulted in an unconstitutional search or that the deputy's actions constituted misconduct.

We note that *Robles* is distinguishable on its facts.  The search at issue in *Robles* was of the residence of a person who was not on probation and not subject to any search condition, whether voluntarily or involuntarily imposed.  The police sought retroactively to justify their warrantless search of the defendant's residence on the basis of the probationary status and search condition of the defendant's brother, with whom the defendant lived, even though they had no knowledge of the brother's probation condition

at the time of the search. Under the particular circumstances presented, the Supreme Court rejected this justification. Although a probationer has a diminished expectation of privacy, "those who reside with such a person enjoy measurably greater privacy expectations . . . ." (*Robles*, *supra*, 23 Cal.4th 798.) In view of the potential for constitutional abuse presented by searches of residences occupied by a number of people, the warrantless search of the nonprobationary defendant's residence could not be justified by the chance fact the residence was also occupied by a probationer. (*Id*. at pp. 794-801.) In the present matter, defendant's case is entirely different.

Even if we assume the search cannot be justified as a probation search, the question remains whether the search can be justified on some other basis. *Sanders* indicates that a search of a person subject to a search condition by an officer unaware of the search condition violates a suspect's Fourth Amendment rights only if the search is "otherwise unlawful . . . ." (*Sanders*, *supra*, 31 Cal.4th at p. 335.)

As our Supreme Court explained in *People v. Reyes* (1998) 19 Cal.4th 743, a parole search condition is not justified on a waiver-of-Fourth-Amendment-rights theory since parolees have no choice but to accept a search condition. (*Id*. at p. 749.) For this reason, the court in *Sanders* stated that no such issue of waiver was raised. (*Sanders*, *supra*, 31 Cal.4th at p. 329, fn. 3.) But the situation is different with respect to a probation search condition. "[A]n adult offender 'has the right to refuse probation, for its conditions may appear to defendant more onerous than the sentence which might be imposed.' " (*Tyrell J.*, *supra*, 8 Cal.4th at p. 82.) For this reason, "a person may validly

14

consent in advance to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term." (*Robles*, *supra*, 23 Cal.4th at p. 795, citing *Bravo*, *supra*, 43 Cal.3d at p. 608.) Thus, as the court held in *Bravo*, *supra*, 43 Cal.3d 600, accepting a probation search condition constitutes "a complete waiver of [the] probationer's Fourth Amendment rights" (*id.* at p. 607), subject only to the following qualification: "We do not suggest that searches of probationers may be conducted for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes. A waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons" (*id.* at p. 610).

Here, assuming *Robles*/*Sanders* require a searching officer to *specifically* be informed by dispatch that a defendant's probation contains a search condition, as opposed to here where the deputy actually believed, and was aware based on his training and experience, weapons violation cases contain search conditions, it cannot be said that the search was related to the rehabilitative and reformative purposes of probation. (*Sanders*, *supra*, 31 Cal.4th at p. 333.) But neither can it be said that the search was unrelated to another legitimate law enforcement purpose or that it was undertaken for harassment or for arbitrary or capricious reasons. The fact, if it be a fact, that a search is not supported by probable cause does not establish that the search was necessarily conducted for purposes of harassment. (*In re Tyrell J.*, *supra*, 8 Cal.4th at p. 87.) "A search is arbitrary 'when the motivation for the search is unrelated to rehabilitative, reformative or

15

legitimate law enforcement purposes, or when the search is motivated by personal animosity toward the parolee.' [Citation.]  A search is a form of harassment when its motivation is a mere whim or caprice.  [Citation.]  [¶]  A mere legal or factual error by an officer that would otherwise render a search illegal, e.g., a mistake in concluding that probable cause exists for an arrest, does not render the search arbitrary, capricious or harassing.  If it did, then we would have no occasion to struggle with the doctrine of search authorization based on an unknown search condition.  This is so since recourse to the doctrine is necessary only when no other legitimate basis supports the search.  It is only when the motivation for the search is wholly arbitrary, when it is based merely on a whim or caprice or when there is no reasonable claim of a legitimate law enforcement purpose, e.g., an officer decides on a whim to stop the next red car he or she sees, that a search based on a probation search condition is unlawful." (*People v. Cervantes* (2002) 103 Cal.App.4th 1404, 1408.)

The record shows, at most, that the deputy made a "legal . . . error," viz., he did not confirm with dispatch that defendant's probation contained a search term and therefore mistakenly believed he was justified in searching defendant's home.  (*People v. Cervantes*, *supra*, 103 Cal.App.4th at p. 1408.)  The record does not indicate, and defendant does not suggest, that the deputy searched defendant based on "whim or caprice."  (*Ibid.*)  The deputy was dispatched to defendant's home on a "suspicious activity call."  When the deputy arrived, he saw a large pipe on a trailer parked outside the home.  The deputy then conducted a records check through dispatch and discovered

the trailer had been reported stolen.  After speaking with defendant and obtaining his driver's license, the deputy ran defendant's name through dispatch and was advised defendant was on probation for brandishing a weapon.  We read the foregoing as a finding that the police searched defendant based on a legitimate law enforcement purpose, i.e., the belief that defendant had some connection with a recent crime.  And because the search was conducted for a legitimate law enforcement purpose and because defendant, by accepting probation and the concomitant search condition, waived his Fourth Amendment rights, the search, though conducted without a warrant and without specific knowledge of defendant's search condition, was not constitutionally unreasonable.

Under these circumstances, no purpose would be served by application of the exclusionary rule to suppress the rifle found in defendant's bedroom.  On the basis of our independent review of the record and on the basis of the constitutional standard of reasonableness, and in light of the controlling California precedent, we conclude the trial court did not err in denying the motion to suppress.  (*People v. Marquez* (1992) 1 Cal.4th 553, 578.)

III

DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
                                                                    P. J.

We concur:


McKINSTER
                    J.


KING
                    J.

18