[No. H025621. Sixth Dist. July 26, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN KEITH HOENINGHAUS, Defendant and Appellant.

COUNSEL

Tutti Hacking, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Christina Vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RUSHING, P. J.—**

## INTRODUCTION

██ The Fourth Amendment proscribes all unreasonable searches and seizures, and it is settled that warrantless searches are per se unreasonable unless they come within an established exception to the warrant requirement. (*Mincey v. Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 98 S.Ct. 2408].) A search by police under an adult probationer's search condition comes within an exception. (See *People v. Woods* (1999) 21 Cal.4th 668, 674–675 [88 Cal.Rptr.2d 88, 981 P.2d 1019].) In this case, we hold that the exception is inapplicable if police are unaware of the probation search condition at the time of a warrantless search.

## STATEMENT OF THE CASE

Defendant Brian Keith Hoeninghaus appeals from a judgment entered after he pleaded no contest to possession of heroin. He claims the court erred in denying his motion to suppress the evidence obtained from him during a warrantless search of his person and car. (Pen. Code, §§ 1538.5 & 1237.5.) We agree and reverse the judgment.

## BACKGROUND

*The Warrantless Search*

On November 1, 2002, around 11:40 a.m., Officer Terry Parker of the Santa Cruz County Sheriff's Department and two deputies were conducting a narcotics-related investigation in a brushy area along the San Lorenzo River levee between Highway 1 and the old Salz tannery, an area frequented by

drug users and littered with discarded needles and drug paraphernalia.[1] The officers already had two persons in custody, when defendant emerged from the brush on a dirt path and approached Officer Parker. Officer Parker identified himself and asked what defendant was doing in the area. Officer Parker observed numerous scabs on the back of defendant's hands, which he thought were caused by prior intravenous (IV) drug use. Officer Parker also noticed that defendant's pupils appeared to be too constricted for the lighting conditions. Defendant said he was just walking around. Suspecting that defendant was under the influence, Officer Parker asked if he used drugs. Defendant became nervous and denied using drugs. When he started to move away, Officer Parker detained and handcuffed him, reexamined defendant's eyes again and concluded that he was under the influence. Officer Parker then arrested and searched him, finding a vial containing a usable amount of a liquid that tested presumptively positive for opiates. Officer Parker and the other deputies brought all three arrestees back to their patrol cars. Defendant said his car was parked a few hundred yards away, and Officer Parker retrieved the key and searched it, finding drug paraphernalia and three grams of a substance that also tested positive for opiates. Officer Parker then brought defendant to the county jail, where he learned that defendant was on probation and subject to a search condition.[2]

### The Motion to Suppress and the Trial Court's Ruling

Defendant moved to suppress the evidence on the ground that Officer Parker lacked both a reasonable suspicion to detain him and probable cause to arrest and search him and later his car. Citing *People v. Robles* (2000) 23 Cal.4th 789 [97 Cal.Rptr.2d 914, 3 P.3d 311] (*Robles*), defendant further argued that the search could not be upheld under his search condition because Officer Parker was not aware of it at the time of the search. The prosecutor argued that Officer Parker had both a reasonable suspicion and probable cause. Citing *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519] (*Tyrell J.*), the prosecutor alternatively argued that the warrantless search was valid under the probation search condition even if Officer Parker was not aware of it when he searched defendant.

In denying the motion, the court agreed that the search was valid under defendant's probation search condition. The court declined to rule on whether Officer Parker had reasonable grounds to detain, arrest, and search defendant.

---

[1] Our summary is based on the evidence and testimony presented at the preliminary hearing, which was also the basis for defendant's motion to suppress.

[2] Defendant's search condition required that he "[s]ubmit your person, residence, vehicle, and areas under your dominion and control to search and seizure at any time of the day or night with or without a warrant *for drugs.*"

## DISCUSSION

As noted, the parties litigated the probation-condition justification for the search as a battle between two California Supreme Court cases: *Tyrell J.* and *Robles*. We note that after judgment was entered, the Supreme Court filed *People v. Sanders* (2003) 31 Cal.4th 318 [2 Cal.Rptr.3d 630, 73 P.3d 496] (*Sanders*), which is equally relevant in determining whether the probation condition justified the search. A discussion of all three cases will help guide our resolution of the issue.

In *Tyrell J., supra*, 8 Cal.4th 68, police searched a juvenile's pocket and found contraband. They did so without a warrant or probable cause and without knowledge that the juvenile was subject to a probation search condition. Nevertheless, a majority of the California Supreme Court upheld the search.[3]

The court first analyzed whether the warrantless search came within an exception to the warrant requirement. The court found that the exception based on consent was inapplicable because juvenile probationers do not voluntarily accept their search conditions, and therefore those conditions do not represent advance consent to warrantless searches. (*Tyrell J., supra*, 8 Cal.4th at pp. 81–83.) The court also found inapplicable the exception based on the special needs of the *adult* probation system that make the warrant and probable-cause requirement impracticable. (*Id.* at pp. 76–79; see *Griffin v. Wisconsin* (1987) 483 U.S. 868 [97 L.Ed.2d 709, 107 S.Ct. 3164] [recognizing the exception].)

Finding no applicable exception, the court focused on a more basic issue: whether the warrantless search intruded upon a constitutionally protected *reasonable* expectation of privacy, that is, whether the juvenile's subjective expectation of privacy concerning the contents of his pocket was one that society was willing to accept as reasonable. (*Tyrell J., supra*, 8 Cal.4th at p. 83.) Noting that in general probationers have a reduced expectation of privacy, the court reasoned that because the juvenile was subject to a search condition, he could not reasonably expect either that he would be free from warrantless searches or that he would be searched *only by those who were aware of the search condition*. Thus, the court concluded that the warrantless search by an officer who was unaware of the juvenile's search condition was

---

[3] Chief Justice Lucas authored the opinion, with Justices Arabian, Baxter, George, and Strankman, concurring. Justice Kennard, joined by Justice Mosk, dissented. For convenience, we shall at times refer to the majority in *Tyrell J.* as "the court."

The majority assumed that police lacked probable cause to search and focused solely on the effect of the search condition and officer's lack of knowledge about it. (*Tyrell J., supra*, 8 Cal.4th at p. 75, fn. 1.)

not a constitutionally significant intrusion in violation of the juvenile's Fourth Amendment rights. (*Id.* at pp. 84–86.)

The court found support in two policy considerations. First, the court opined that requiring advance knowledge of a search condition "would be inconsistent with the special needs of the juvenile probation scheme," which "embraces a goal of rehabilitating youngsters who have transgressed the law, a goal arguably stronger than in the adult context. [Citations.]" (*Tyrell J., supra*, 8 Cal.4th at pp. 86–87.) The court explained that a search condition promotes rehabilitation by deterring future misconduct and opined that the deterrent is strongest when the probationer must assume that every police officer might stop and search him at any moment. Conversely, "[t]his important deterrent effect would be severely eroded if police officers were required to learn the names and memorize the faces of the dozens perhaps hundreds of juvenile probationers in their jurisdiction." (*Ibid.*) Second, the court noted that if the juvenile had not been subject to a search condition, the evidence would have been suppressed under the exclusionary rule. Thus, the court opined that although advance knowledge may be desirable, the exclusionary rule was an effective deterrent against unreasonable searches without an advance knowledge requirement. (*Id.* at pp. 87, 89.)[4]

*Tyrell J.*'s legal analysis, which focuses on the scope of the juvenile probationer's reasonable expectation of privacy, logically applies to adult probationers. However, as we shall explain, the Supreme Court's subsequent decision in *Robles, supra*, 23 Cal.4th 789, casts doubt on *Tyrell J.*'s analysis and whether it should be extended to adult probationers.

In *Robles*, the police searched the home of an adult probationer and found evidence later used against the probationer's *roommate*. At the time of the search, police were unaware of the probationer's search condition. The roommate moved to suppress the evidence, but the trial court upheld the search under the probationer's search condition. The California Supreme Court reversed, holding that the residential search could not be justified under a search condition of which the police were unaware at the time of the search.[5] (*Robles, supra*, 23 Cal.4th at pp. 792–793.)

---

[4] In her dissenting opinion, Justice Kennard deemed the majority's analysis to be "unsound" and concluded instead that knowledge of a probation search condition was essential to the validity of a warrantless probation search. (*Tyrell J., supra*, 8 Cal.4th at pp. 91–97 (dis. opn. of Kennard, J.).) Justice Kennard further opined that the majority's analysis provided police with "an incentive to search any juvenile despite the lack of probable cause and a warrant, for if it later turns out that the juvenile has a probation search condition, the fruits of the search will be admissible in court." (*Id.* at p. 98.)

[5] Justice Baxter authored the opinion with Chief Justice George, Justices Werdeger and Chin, concurring. Justices Mosk, Kennard, and Brown filed separate concurring opinions.

■ The court revisited the consent exception to the warrant requirement that *Tyrell J.* found inapplicable. The court explained that in voluntarily accepting a probation search condition to avoid incarceration, a probationer consents in advance to future warrantless searches. (*Robles, supra*, 23 Cal.4th at p. 795, 97 Cal.Rptr.2d 914, 3 P.3d 311.) Citing *People v. Woods, supra*, 21 Cal.4th 668, the court then discussed the impact of a probationer's consent on the Fourth Amendment rights of his or her roommates. In *Woods*, the court held that where police rely on a probation search condition, and where the circumstances surrounding a search, viewed objectively, reveal a legitimate probationary justification to search, a search of common areas of a residence that produces incriminating evidence against a probationer's *roommate* does not violate the roommate's Fourth Amendment rights, even if the actual reason for the search was to investigate the roommate and not monitor the probationer. (*Id.* at pp. 678–681; *Robles, supra*, 23 Cal.4th at p. 796–797.) To explain why *Woods* adopted an objective standard and rejected reliance on the subjective motives of an officer, the *Robles* court stated that "different officers presented with the same facts may harbor varying motivations in deciding to search a probationer's house pursuant to a known search condition; thus, focusing on subjective intent would likely lead to disparate results in factually comparable situations. [Citation.] Moreover, since officers who rely on a probation clause must confine the scope of their search to the terms articulated in the clause and to those areas of the residence over which they reasonably believe the probationer has access or control, we concluded [in *Woods*] 'there is little to be advanced by validating a search merely upon the searching officer's ability to convincingly articulate the proper subjective motivation for his or her actions.' [Citation.]" (*Id.* at p. 797, fn. 3.)

*Robles* cautioned, however, that *Woods* does not mean an investigatory search is valid when police are unaware of the probationer's search condition. "As our decisions indicate, searches that are undertaken pursuant to a probationer's advance consent must be reasonably related to the purposes of probation. [Citations.] Significantly, a search of a particular residence cannot be 'reasonably related' to a probationary purpose when the officers involved do not even know of a probationer who is sufficiently connected to the residence. Moreover, if officers lack knowledge of a probationer's advance consent when they search the residence, their actions are wholly arbitrary in the sense that they search without legal justification and without any per- ceived limits to their authority. [Citations.]" (*Robles, supra*, 23 Cal.4th at p. 797.)

This broad caveat contradicts *Tyrell J.,* which considered an officer's ignorance of a probation condition to be irrelevant and found that warrantless searches even by officers ignorant of a condition still promoted the rehabilita- tive purpose of juvenile probation. Despite this analytical friction, *Robles* did not disapprove *Tyrell J.* The court simply declined to extend *Tyrell J.*'s logic,

opining that although a probationer may have a reduced expectation of privacy, "there is no doubt that those who reside with such a person enjoy measurably greater privacy expectations in the eyes of society." (*Robles, supra,* 23 Cal.4th at p. 798.) In making this distinction, however, the court implied that it is an officer's knowledge of a search condition that transforms what would otherwise be a presumptively unreasonable warrantless search into a *probation* search and thus valid as an exception to the warrant requirement. In particular, the court explained that under *Woods,* "if persons live with a probationer, common or shared areas of their residence may be searched by officers *aware of an applicable search condition.* [Citations.] Critically, however, cohabitants need not anticipate that officers *with no knowledge of the probationer's existence or search condition* may freely invade their residence in the absence of a warrant or exigent circumstances. Thus, while cohabitants have no cause to complain of searches that are reasonably and objectively related to the purposes of probation—for example, when routine monitoring occurs [citation] or when facts known to the police indicate a possible probation violation that would justify action pursuant to a known search clause [citation]—they may legitimately challenge those searches that are not." (*Id.* at pp. 798–799, fn. omitted, italics added.)

We further note that *Robles* contradicts *Tyrell J.*'s view that even without an advance knowledge requirement, the exclusionary rule provides an adequate deterrent against unlawful searches. (*Tyrell J., supra,* 8 Cal.4th at p. 89.) In contrast, the court in *Robles* stated, "Allowing the People to validate a warrantless residential search, after the fact, by means of showing a sufficient connection between the residence and any one of a number of occupants who happens to be subject to a search clause, would encourage the police to engage in facially invalid searches with increased odds that a justification could be found later. It also would create a significant potential for abuse since the police, in effect, would be conducting searches with no perceived boundaries, limitations, or justification. [Citation.]" (*Robles, supra,* 23 Cal.4th at p. 800.)[6]

---

[6] In her concurring opinion, Justice Kennard reiterated her dissenting view in *Tyrell J.* that police may not rely on a search condition that they were unaware of at the time of the search. She also reiterated her dissenting view in *Woods* that police cannot purposefully use a probationer's search condition to search for evidence against his or her roommate. (*Robles, supra,* 23 Cal.4th at pp. 802–803 (conc. opn. of Kennard, J.); *People v. Woods, supra,* 21 Cal.4th at p. 682 (dis. opn. of Kennard, J.).)

In her concurring opinion, Justice Brown found *Tyrell J.*'s legal analysis of the warrantless search, which placed determinative importance on the scope of a reasonable expectation of privacy, to be "constitutionally suspect" and stated that the analysis should neither be endorsed nor perpetuated. (*Robles, supra,* 23 Cal.4th at pp. 804–806 (conc. opn. of Brown, J.).)

We now turn to *Sanders, supra,* 31 Cal.4th 318, which follows and extends *Robles* and casts even more doubt on the propriety of extending *Tyrell J.* to adult probationers.

In *Sanders,* police searched the residence of a parolee and found incriminating evidence later used against both the parolee and his roommate. At the time of the search, police were unaware of the parolee's search condition. Given *Robles,* the Supreme Court invalidated the search against the roommate, finding no reason to distinguish the Fourth Amendment rights of a parolee's roommate from those of the probationer's roommate in *Robles.* (*Sanders, supra,* 31 Cal.4th at p. 330.) The court then extended *Robles* to the parolee himself, holding that "an otherwise unlawful search of the residence of an adult parolee may not be justified by the circumstance that the suspect was subject to a search condition of which the law enforcement officers were unaware when the search was conducted."[7] (*Id.* at p. 335, fn. omitted.)

█ The court stated that its holding flows from "the rule" that the reasonableness of a warrantless search must be determined from the circumstances known to the officer at the time of a search. (*Sanders, supra,* 31 Cal.4th at p. 332.) The court explained that when police search under a parole search condition, the intrusion is slight because the parolee's expectation of privacy is diminished by his awareness that his activities are being routinely and closely monitored. Moreover, this slight intrusion is justified by the state's interest in monitoring compliance with the terms of parole, deterring crimes, and protecting the public. However, when police are unaware of the search condition, the intrusion cannot be justified by the state's interest in supervising the parolee or by the concern that parolees are more likely to commit criminal acts. Such a warrantless search is, therefore, presumptively unreasonable unless some other exception to the warrant requirement applies. (*Id.* at pp. 332–334.) In support of its analysis, the court relied on *United States v. Knights* (2001) 534 U.S. 112 [151 L.Ed.2d 497, 122 S.Ct. 587], which upheld a general investigatory search of a probationer by officers who knew the probationer was subject to a search condition. In *Knights,* the court explained, "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." (*Id.* at p. 121; *Sanders, supra,* 31 Cal.4th at p. 333.)

█ In short, *Sanders* establishes that the state may not claim that a warrantless search was a valid *parole* search if police were unaware of the

---

[7] Justice Moreno authored the opinion with Chief Justice George, and Justices Werdeger and Chin concurring. Justices Kennard and Brown filed separate concurring opinions. Justice Baxter dissented.

search condition at the time of the search. ■ In this regard, *Sanders* mirrors the observation in *Robles* that to be a probation search, the search must be reasonably and objectively related to the purposes of probation; and if the officer is unaware of any search condition, there can be no relationship, and the warrantless search cannot be upheld as a *probation* search. (*Robles, supra,* 23 Cal.4th at pp. 797–799.)

The *Sanders* court further explained that "the rule" placing determinative importance on the officer's knowledge at the time of the search, is "consistent with the primary purpose of the exclusionary rule—to deter police misconduct." (*Sanders, supra,* 31 Cal.4th at pp. 332, 334.) The court opined that "the admission of evidence obtained during a search of a residence that the officer had no reason to believe was lawful merely because it later was discovered that the suspect was subject to a search condition would legitimize unlawful police conduct." (*Id.* at p. 335.) In this regard, *Sanders* reaffirms the view in *Robles* that without an advance knowledge requirement, police would be encouraged to conduct facially unlawful warrantless searches. (*Robles, supra,* 23 Cal.4th at pp. 799–800.) Indeed, the *Sanders* court reiterated, with implicit approval, Justice Kennard's dissent in *Tyrell J.*, where, as noted, she too opined that without an advance knowledge requirement, police had an incentive to conduct unlawful searches. (*Sanders, supra,* 31 Cal.4th at pp. 326–328; see *Tyrell J., supra,* 8 Cal.4th at pp. 94, 98 (dis. opn. of Kennard, J.), discussed, *ante,* fn. 4.) The *Sanders* court also cited numerous articles discussing *Tyrell J.* and noted that the legal commentators had given it a "chilly reception." (*Sanders, supra,* 31 Cal.4th at pp. 328–329, quoting, for example, 4 La Fave, Search and Seizure (3d ed. 1996) § 10.10(e), p. 792 [calling *Tyrell J.*'s reasoning "bizarre"].) Nevertheless, the *Sanders* court did not overrule *Tyrell J.* or expressly limit it to juvenile probationers. Thus, the task falls upon us to decide whether to extend *Tyrell J.* to defendant, an adult probationer.

Our chronological summary reveals that the court has changed the analysis it uses to determine the propriety of a warrantless search in cases involving a search condition. In *Tyrell J.,* the court focused on the scope of a probationer's reasonable expectation of privacy. In *Robles,* the court distanced itself from *Tyrell J.*'s analysis, implying that knowledge of a search condition is essential to a valid probation search. In *Sanders,* the court abandoned *Tyrell J.*'s analysis, implicitly adopted Justice Kennard's dissenting view in *Tyrell J.*, and held when the state seeks to justify a warrantless search under a search condition, the propriety of the search depends on whether police knew about the condition at the time of the search.

Our summary further reveals that the court has reversed its view of the role played by an advance knowledge requirement in deterring unlawful police

conduct. Where *Tyrell J.* considered such a requirement to be unnecessary, *Robles* and *Sanders* found the requirement to be vitally important because without it police would be encouraged to conduct unlawful searches.

■ In light of these fundamental shifts by the court, we must decline to extend *Tyrell J.* to adult probationers. Indeed, because *Sanders* establishes the analysis to be used in determining the propriety of a warrantless search, we consider ourselves bound to apply it in this case. (See *Auto Equity Sales v. Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) It follows, therefore, that since Officer Parker was unaware of defendant's search condition before the search, the mere fact that defendant was subject to a condition cannot validate the warrantless search.

This does not end our analysis, however, because defendant's status as an adult probationer—as opposed to a parolee or juvenile probationer—raises an issue that was not addressed in *Tyrell J., Robles*, or *Sanders*. The court in *Tyrell J.* found the consent exception to the warrant requirement inapplicable because juvenile probationers do not voluntarily accept their search conditions. In *Sanders*, the court noted that in *Anderson v. Commonwealth* (1997) 25 Va.App. 565, 567 [490 S.E.2d 274], a Virginia court applied the reasoning of *Tyrell J.* to an adult probationer who had agreed to waive his Fourth Amendment rights as a condition of probation. (*Sanders, supra*, 31 Cal.4th at p. 329, fn. 3.) The *Sanders* court considered it unnecessary to discuss the consent exception because the case before it involved an *involuntary* parole search condition. (*Ibid.*) Thus, the issue raised by defendant's status as an adult probationer is whether he consented in advance to the warrantless search here when he accepted a probation search condition.[8]

Two cases that address consent in the context of an adult probation search condition help focus our discussion.

In *People v. Mason* (1971) 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630] (*Mason*), disapproved on other grounds in *People v. Lent* (1975) 15 Cal.3d 481, 486, footnote 1 [124 Cal.Rptr. 905, 541 P.2d 545], police searched a probationer's residence under his probation search condition. The defendant claimed the search condition itself was unreasonable and violated his Fourth Amendment rights. (*Mason, supra*, 5 Cal.3d at p. 764, fn. omitted.) In rejecting this claim, the court opined that "a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection." (*Mason, supra*, 5 Cal.3d at p. 765.) Noting that *Zap v. United States* (1946) 328 U.S. 624, 628 [90 L.Ed. 1477, 66 S.Ct. 1277]

---

[8] We solicited supplemental briefing from the parties on this issue.

upheld the validity of an advance waiver of Fourth Amendment rights akin to the search condition before it, the *Mason* court concluded that "when defendant in order to obtain probation specifically agreed to permit at any time a warrantless search of his person, car and house, he voluntarily waived whatever claim of privacy he might otherwise have had." (*Id.* at p. 766.)

In *People v. Bravo* (1987) 43 Cal.3d 600 [238 Cal.Rptr. 282, 738 P.2d 336] (*Bravo*), police relied on a probation search condition to search the defendant's residence. (*Id.* at p. 603.) In challenging the search, the defendant claimed that even when police rely on a search condition, they must also have some reasonable suspicion of criminal conduct to justify the search. (*Id.* at pp. 603–604.) Our Supreme Court disagreed.

The court noted that in accepting the probation condition, the defendant consented to warrantless searches. The court further noted that "[a] search conducted pursuant to a valid consent does not violate the Fourth Amendment unless the search exceeds the scope of the consent. [Citation.]" (*Bravo, supra,* 43 Cal.3d at p. 605.) Thus, the issue before it was whether the search exceeded the scope of the defendant's consent.

In answering that question, the court observed that the scope of a probationer's consent is defined by the terms of the probation condition. Moreover, the meaning of a probation condition must be determined by an objective test and not the probationer's subjective understanding of it: What would a reasonable person understand from the words of the condition. The court explained that the reason for an objective test is that "[l]aw enforcement officers who rely on search conditions in probation orders, the probationer himself, and other judges who may be called upon to determine the lawfulness of a search, must be able to determine the scope of the condition by reference to the probation order. We cannot expect police officers and probation agents who undertake searches pursuant to a search condition of a probation agreement to do more than give the condition the meaning that would appear to a reasonable, objective reader. They can neither inquire into the subjective understanding of the probationer, nor analyze the condition in light of legal precedent drawing fine points based on minor differences in the wording of search conditions in other probation orders." (*Bravo, supra,* 43 Cal.3d at pp. 606–607, fn. omitted.)

Turning to the condition before it, the court noted that the defendant consented to searches with *or without a warrant.* (*Bravo, supra,* 43 Cal.3d at p. 607.) The court opined that "a search condition of probation that permits a search without a warrant also permits a search without 'reasonable cause,' as the former includes the latter. [Citation.]" (*Id.* at p. 611.) Moreover, because the search condition was identical to that in *Mason*, the *Bravo* court adopted

*Mason's* view that the condition represented "a complete waiver of that probationer's Fourth Amendment rights, save only his right to object to harassment or searches conducted in an unreasonable manner. [Citation.]" (*Bravo, supra,* 43 Cal.3d at p. 607; see *Mason, supra,* 5 Cal.3d at pp. 765–766, fn. 3.) Accordingly, the police were authorized to search the defendant under the probation condition without reasonable cause, that is, without any particularized suspicion of criminal conduct.

■ Preliminarily, we observe that the consent exception to the warrant requirement typically arises in a situation where police have some reason to suspect criminal activity, but, instead of seeking a warrant or evidence to establish probable cause, they simply ask for permission to search. If a person with actual or apparent authority gives permission, then a warrantless search comes within the consent exception. (See generally 3 La Fave, *supra,* § 8.1, pp. 596–598; e.g., *Schneckloth v. Bustamonte* (1973) 412 U.S. 218 [36 L.Ed.2d 854, 93 S.Ct. 2041] [consent to search car given during traffic stop]; *People v. Michael* (1955) 45 Cal.2d 751 [290 P.2d 852] [consent to search house given in response to officer's request].) A probation condition represents a different, less immediate form of consent. ■ As noted, a probationer consents in advance to potential future warrantless searches during the probation period. Thus, when police rely on a probation condition, they do not have to ask for permission immediately before conducting a warrantless search.[9]

■ With this in mind, we note that *Mason* and *Bravo* do not suggest that a probation search condition and the probationer's advance consent represent different and independent exceptions to the warrant requirement. Rather, a probation condition implicates only the consent exception.[10] Indeed, as *Bravo* explains, a probation condition is the written manifestation of the probationer's consent, and it both defines the scope of consent and sets the parameters of a proper consent search. In essence, therefore, a probation search condition and the concept of advance consent are interchangeable labels for the same thing. It follows, therefore, that knowledge of a condition is knowledge of consent—i.e., when police search with knowledge of a condition, they are conducting a search with the probationer's advance consent. Conversely, however, when police are unaware of the condition, they cannot know that a probationer has given advance consent and therefore cannot claim to be conducting a probation or consent search. Thus, a

[9] However, to conduct a probation search of a residence, police must comply with knock-notice requirements. (*People v. Lilienthal* (1978) 22 Cal.3d 891, 900 [150 Cal.Rptr. 910, 587 P.2d 706]; *People v. Constancio* (1974) 42 Cal.App.3d 533, 542 [116 Cal.Rptr. 910]; see Pen. Code, § 1531.)

[10] Parole and juvenile probation search conditions, on the other hand, which do not involve consent, implicate a different exception: judicial authorization via an involuntarily imposed condition of release.

warrantless search of a probationer cannot be upheld under the consent exception if police are unaware that the probationer gave advance consent to the search. Our analysis simply follows the logic and governing rule, explained in *Sanders*, that the reasonableness of a warrantless search must be determined from what police know at the time of the search.

We acknowledge that in *People v. Viers* (1991) 1 Cal.App.4th 990 [2 Cal.Rptr.2d 667], the court foreshadowed the Supreme Court's decision in *Tyrell J.* and held that the detention of a probationer was valid under a search condition even though police were unaware of the condition at the time of the detention. (*Id.* at p. 993.) The court reasoned the defendant had waived the protection of the Fourth Amendment. (1 Cal.App.4th at p. 993.) "This is so whether the police know it or not. The police conduct is not justified by what the police know or whether it is objectively or subjectively reasonable. The defendant has waived the right to complain unless a search is conducted in an unreasonable manner or for the purpose of harassment. [Citation.]" (*Ibid.*) Given *Robles*, and *Sanders,* we do not consider *Viers* to be persuasive, or even viable, authority and decline to adopt its analysis.[11]

In their supplemental brief, the People do not claim that the consent exception applies even when police are unaware of a probation condition and the probationer's advance consent. Rather, the People more narrowly claim that here defendant consented to the warrantless search. They note that defendant's probation condition did not require the police to have advance knowledge of the probation condition before conducting a search. Thus, they argue that in agreeing to submit to warrantless searches by any officer at any time, defendant consented to searches by police with *or without* knowledge of his search condition or advance consent.

We reject the People's interpretation of the probation condition, which infers from its silence on the issue of advance knowledge that defendant consented to searches without advance knowledge. As *Bravo* explains, the purpose of a probation condition is to inform police, among others, about the scope of a probationer's consent and thereby ensure that they do not conduct unreasonable searches by exceeding it. (*Bravo, supra,* 43 Cal.3d at pp. 606–607.) Here, defendant's search condition expressly limited the scope of defendant's consent to searches for drugs. (See fn. 2, *ante.*) Under the circumstances, we consider it unreasonable to infer from mere silence that despite limiting the scope of his consent, defendant agreed to be searched by police who are unaware of this limitation.

---

[11] For the same reason, we decline to follow *People v. Velasquez* (1993) 21 Cal.App.4th 555 [26 Cal.Rptr.2d 320], which followed *People v. Viers, supra,* 1 Cal.App.4th 990, and *People v. Cervantes* (2002) 103 Cal.App.4th 1404, 1407–1408 [127 Cal.Rptr.2d 468], which opined that there was no strict requirement of advance knowledge.

 Even if we assume that the condition is ambiguous, we do not find it reasonably susceptible of the People's interpretation. Again, as *Bravo* explains, knowledge of a probation condition is what informs police about the limits of their authority to conduct warrantless searches. In *Mason* and *Bravo,* the search conditions were also silent concerning an advance knowledge requirement. Nevertheless, in both cases, the court stated that a probationer does not waive Fourth Amendment protection against searches that are arbitrary, capricious, or harassing. If, as the People argue, police did not need to know that their authority to search defendant was limited to searching for drugs, then police could search him without any limitation and without any grounds to believe the search was reasonable; and if, after learning about the condition, they claimed that they were looking for drugs, the search could be upheld under the consent exception. However, the *Robles* court opined that when police search without a warrant, without any perceived limits to their authority, and without grounds to justify the search, the search is arbitrary. (*Robles, supra,* 23 Cal.4th at p. 797.) Thus, in effect, the People claim that defendant consented not only to warrantless searches but also to arbitrary searches. In our view, such a position is unreasonable and against public policy. Indeed, because knowledge of a search condition provides essential protection against arbitrary searches, we believe that advance knowledge is necessarily implicit in a search condition.

 Even if we considered defendant's probation condition reasonably susceptible of the People's interpretation, we would decline to adopt it for another reason. We observe that any ambiguity in the probation condition cannot reasonably be attributed to defendant because he did not draft it. Indeed, although defendants are said to have voluntarily agreed to their probation search conditions, in reality, they do not have much negotiating power at sentencing over the precise terms of probation conditions. Rather, probation conditions are usually presented to a defendant as part of an all-or-nothing choice between prison and probation. (See 4 La Fave, Search and Seizure, *supra,* § 10.10(b), pp. 764–765.) Moreover, the People's interpretation, as noted, would diminish defendant's Fourth Amendment protection because it would, in effect, permit the validation of arbitrary searches after the fact. Under the circumstances, it would be unfair to resolve any alleged ambiguity in the search condition *against* defendant. Rather, we find an ambiguous probation condition sufficiently akin to an ambiguous penal statute to warrant application of a rule of lenity, under which reasonable ambiguities in the condition are resolved in favor of the defendant. (Cf. *People v. Ramirez* (1992) 6 Cal.App.4th 1762, 1766 [8 Cal.Rptr.2d 624] [under rule of lenity, ambiguities in penal statutes are ordinarily resolved in favor of the defendant].)

On a more fundamental level, we also consider the People's view that a probationer could be required, in effect, to waive advance knowledge to be

against public policy in that it would substantially degrade the deterrent effect of the exclusionary rule and jeopardize the Fourth Amendment rights of nonprobationers. As noted, *Robles* and *Sanders* opined that the lack of an advance knowledge requirement could encourage unreasonable searches. The court's apprehension applies with equal, if not greater, force to search conditions that include an express waiver of advance knowledge because such a condition would expressly authorize police to conduct warrantless searches without any perceived limits on their authority.

Moreover, in *Robles*, the court observed that allowing the police to justify an otherwise unreasonable residential search after the fact would be especially harmful to nonprobationers in communities where a higher than average number of persons are on probation. (*Robles, supra,* 23 Cal.4th at p. 800.) In *Sanders*, the court opined that "[t]he same would be true if we permitted the People to admit the evidence only against the person subject to the search condition, rather than against all of the occupants of the residence. The police still would be encouraged to engage in facially invalid searches in the hope that at least one of the occupants would be subject to a search condition. Suppressing the evidence only as to cohabitants of a person subject to a search condition, but not as to the probationer or parolee, would do little to decrease the chance that a person living with a probationer or parolee would be the victim of an unlawful search and would largely eviscerate the protections granted in *Robles*." (*Sanders, supra,* 31 Cal.4th at p. 336.)

In our view, the threat to the rights of nonprobationers who live in communities with large numbers of probationers would only increase if we condoned the People's view that a probation condition could include a waiver of advance knowledge.

In light of our discussion, therefore, we reiterate our conclusion that since Officer Parker was unaware of defendant's search condition and his consent to warrantless searches, the search here cannot be upheld as a valid probation or consent search. The trial court erred in concluding otherwise.[12]

It remains for us to determine the appropriate disposition in this case. Ordinarily, on appeal from the denial of a suppression motion, we review the evidence in a light favorable to the trial court's ruling, adopt those express and implied findings of fact that are supported by substantial evidence, and independently determine whether those findings support the court's legal conclusion that the search was reasonable under the Fourth

---

[12] We note that in *People v. Bowers* (2004) 117 Cal.App.4th 1261 [13 Cal.Rptr.3d 15] and *People v. Hester* (2004) 119 Cal.App.4th 376 [14 Cal.Rptr.3d 377], the courts reached the same conclusion concerning the requirement of advance knowledge in the adult probation context as we do.

Amendment. (*People v. Leyba* (1981) 29 Cal.3d 591, 596–598 [174 Cal.Rptr. 867, 629 P.2d 961]; *People v. Groat* (1993) 19 Cal.App.4th 1228, 1231 [24 Cal.Rptr.2d 15].) The standard of review recognizes that it is the exclusive province of the trial court to make the factual findings and credibility determinations that support a ruling and the legal theory underlying it. (See *People v. Maury* (2003) 30 Cal.4th 342, 403 [133 Cal.Rptr.2d 561, 68 P.3d 1].)

Here, court denied defendant's motion on a single undisputed fact: defendant was subject to a search condition. As noted, the court did not address the prosecution's alternative justification for the warrantless search: Officer Parker had reasonable suspicion to detain defendant and then developed probable cause to search him and his car. Thus, we do not have before us any express or implied findings of fact and determinations of credibility that might permit us to uphold the search on this theory. Accordingly, we find that the trial court's ruling on defendant's motion to suppress is incomplete and consider it appropriate and necessary to remand the matter for further proceedings.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to conduct a new hearing on the motion to suppress previously filed by defendant. If the court grants the motion, then it shall afford defendant the opportunity to withdraw his plea of no contest. If the court denies the motion, then it shall reinstate the judgment. (See, e.g., *People v. Torres* (1992) 6 Cal.App.4th 1324, 1335 [8 Cal.Rptr.2d 332].)

Premo, J. and Elia, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 13, 2004. Baxter, J., and Chin, J., were of the opinion that the petition should be granted.