Filed 10/19/15  P. v. Moore CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041373 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1473919) |
| v. | |
| JIMMY MOORE, | |
| Defendant and Appellant. | |

A police search of defendant Jimmy Moore yielded a baggie of methamphetamine and a pipe.  After unsuccessfully moving to suppress the evidence obtained as a result of the search, defendant pleaded no contest to misdemeanor possession of a controlled substance and misdemeanor possession of controlled substance paraphernalia.  He appeals the denial of his suppression motion.  We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Our recitation of the facts is based the testimony of San Jose Police Officer Brett Weidner and defendant at the hearing on defendant's suppression motion.

At approximately 11:00 p.m. on January 18, 2014, Officer Weidner observed defendant riding a bicycle that was not equipped with a headlight as required by the Vehicle Code.  Defendant was holding a flashlight to illuminate his way.  Officer Weidner and a second officer stopped defendant and asked for identification.  Defendant handed Officer Weidner his California driver's license.  Officer Weidner asked if he could search defendant and defendant refused.  Officer Weidner asked whether defendant

was on probation or parole. Defendant responded that he was not, saying he had been discharged from parole days earlier. Defendant testified that he had spoken with his parole officer on January 16, 2014, and she told him she was going to discharge him from parole at that time.

Officer Weidner ran a records check on defendant. The dispatcher informed him that defendant was on parole and sent the results of the records check to the computer in Officer Weidner's patrol car. Officer Weidner reviewed those results, which he said indicated defendant was to be discharged from parole on January 20, 2014. Officer Weidner testified that the dispatcher generally provides records check results in two to five minutes; he did not testify as to how long it took in this instance.

Officer Weidner continued to ask to search defendant; he never told defendant he could not refuse a search. Officer Weidner testified that, eventually, defendant consented saying, "fine, go ahead." Defendant denied consenting to a search. Officer Weidner testified that he relied on defendant's consent to perform the search, during which he found a small plastic baggie with a white crystalline substance in it. Officer Weidner recognized the substance to be methamphetamine. An in-field test revealed the substance to be presumptive positive for methamphetamine. Approximately 10 minutes elapsed between the time officers stopped defendant and the time of the search.

Following the search, Officer Weidner arrested defendant. Though not testified to at the suppression hearing, the parties' briefs below indicate officers found a pipe in the police cruiser after defendant was detained in it.

The Santa Clara County District Attorney charged defendant with felony possession of a controlled substance (Health & Saf. Code, former § 11377, subd. (a)) and misdemeanor possession of drug paraphernalia (Health & Saf. Code, former § 11364.1). Defendant moved to suppress the drug and pipe evidence, arguing the warrantless search of his person was unconstitutional.

The court held a hearing on the suppression motion on July 23, 2014. At the hearing, the following stipulation was read into the record: "[O]n January 18th, 2014, at 11:35 and 31 seconds p.m., dispatcher from SJPD Leonardo Silveira . . . contacted Parole Agent Corral . . . who contacted the State. The State stated that he has been discharged even though he shows in the system as not having been discharged yet. . . ." The parties agree the dispatcher supplied the foregoing information after defendant had already been searched and arrested. Also at the hearing, the People offered and the court admitted into evidence three documents the State of Tennessee board of parole supplied to the deputy district attorney and an accompanying declaration. The first document is defendant's parole certificate. The declaration states that the parole certificate was kept in the normal course of business and is relied upon by parole officers to determine the status of parolees. Defendant's parole certificate shows that he was paroled on February 14, 2013, and that, as a condition of his parole, he agreed to have his person searched without a warrant or reasonable suspicion by any law enforcement officer. The second document appears to be a computer database printout; it is entitled "ETOMIS--Offender attributes." One line of the printout states "EXP 01/20/2014." The final document is from the "Interstate Commission for Adult Offender Supervision." It identifies defendant's "type of supervision" as "parole" and the "supervision termination date" as January 20, 2014.

The court denied defendant's motion to suppress, reasoning that "the officer reasonably believed [defendant] was on parole at the time although the officer indicated he didn't really rely on that, but the Court can."

The court reduced the possession charge to a misdemeanor. On August 12, 2014, defendant pleaded no contest to both counts and the court sentenced him to 25 days with credit for time served. Defendant timely appealed.

## II. DISCUSSION

Defendant asserts two arguments on appeal. First, he maintains the search cannot be justified as a parole search because the People failed to show a basis for Officer

3

Weidner's belief that defendant was on parole as required by the *Harvey*/*Madden*[1] rule. Second, he contends his consent to the search was invalid because it was procured following a prolonged detention.  We conclude the search was a valid parole search.  Accordingly, we need not reach the issue of consent.

*A*.    ***Governing Legal Principles***

In reviewing a ruling on a motion to suppress, we defer to the trial court's factual findings where they are supported by substantial evidence.  (*People v. Weaver* (2001) 26 Cal.4th 876, 924 (*Weaver*).)  "We must accept factual inferences in favor of the trial court's ruling.  [Citation.]  If there is conflicting testimony, we must accept the trial court's resolution of disputed facts and inferences, its evaluations of credibility, and the version of events most favorable to the People, to the extent the record supports them." (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.)  We exercise our independent judgment in determining whether the search or seizure was reasonable under the Fourth Amendment.  (*Weaver*, *supra*, at p. 924.)  Whether a search is reasonable, and thus valid, is determined based upon the circumstances known to the officer when the search is conducted and not upon the officer's actual motivations.  (*People v. Sanders* (2003) 31 Cal.4th 318, 334.)

A warrantless search is per se unreasonable under the Fourth Amendment unless a recognized exception to the search warrant requirement applies.  (*People v. Hoeninghaus* (2004) 120 Cal.App.4th 1180, 1184.)  Consent is one such recognized exception to the warrant requirement.  (*People v. Superior Court* (*Walker*) (2006) 143 Cal.App.4th 1183, 1198.)  So too is a parole search (*People v. Schmitz* (2012) 55 Cal.4th 909, 921 (*Schmitz*) [warrantless and suspicionless parole search may be reasonable based on a totality of the circumstances balancing test]).  The People bore the burden of establishing that an

---

[1] *People v. Harvey* (1958) 156 Cal.App.2d 516; *People v. Madden* (1970) 2 Cal.3d 1017.

exception to the warrant requirement justified the search. (*People v. Camacho* (2000) 23 Cal.4th 824, 830.)

### B.    *The Search Constituted a Valid Parole Search*

The People contend defendant's known status as a parolee justified the warrantless search.[2] Defendant maintains the search cannot be justified as a parole search because the People violated the *Harvey/Madden* rule by failing to show a basis for Officer Weidner's belief that defendant was on parole.

"Both [our Supreme Court] and the United States Supreme Court have employed traditional standards of reasonableness to evaluate the constitutionality of warrantless . . . parole searches." (*Schmitz, supra*, 55 Cal.4th at pp. 921-922.) Courts apply a "totality of the circumstances balancing test to evaluate the reasonableness of a warrantless and suspicionless parole search." (*Id*. at p. 921.) "This approach . . . recognizes the state's compelling interest to supervise parolees and to ensure compliance with the terms of their release," as well as "that 'parolees have fewer expectations of privacy than [even]

---

[2] The trial court relied on the officer's reasonable belief that defendant was on parole, suggesting reliance on the good faith exception to the exclusionary rule. (*People v. Jack* (1997) 60 Cal.App.4th 1129, 1134 ["The good faith exception to the exclusionary rule applies to allow the introduction of evidence *illegally* obtained in violation of a defendant's Fourth Amendment right of privacy, where the evidence was obtained by an officer holding ' "the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." ' "].) It is not entirely clear whether that exception would apply if, as defendant contends, Officer Weidner was incorrect about defendant's parole status. (See *People v. Willis* (2002) 28 Cal.4th 22, 44 [refusing to apply exclusionary rule where officers conducted warrantless search on mistaken belief that defendant was on parole because the error was attributable to "adjuncts to the law enforcement team" such that exclusion would have a deterrent effect]; Levenson, Cal. Criminal Procedure (The Rutter Group 2014) § 5:4, p. 5-10 ["The good faith exception does not apply when an error by parole or Department of Corrections officials results in a parole search being conducted on an individual who is not on parole at the time of the search."].) In any event, the People have never argued that the good faith exception applies. Rather, they contend the search was a valid parole search. Accordingly, we confine ourselves to that argument.

probationers, because parole is more akin to imprisonment than probation is to imprisonment.' " (*Ibid*.)  In order for a suspicionless search of a parolee to be reasonable, the officer must be aware of the parolee's status and the existence of a search condition. (*People v. Sanders*, *supra*, 31 Cal.4th at p. 335.)  However, "[b]ecause California law requires that all parolees be subject to warrantless and suspicionless searches as a condition of their release, an officer's knowledge of a parolee's status is equivalent to knowledge of the applicable search condition." (*Schmitz*, *supra*, at p. 922, fn. 13.)

Here, the record evidence, " 'view[ed] . . . in the light most favorable to the trial court's ruling,' " establishes defendant was on parole at the time of the search. (*People v. Davis* (2005) 36 Cal.4th 510, 528.)  Specifically, the Interstate Commission for Adult Offender Supervision document shows defendant's parole terminated on January 20, 2014.  And the parole certificate proves defendant was subject to a search condition.

Turning to Officer Weidner's knowledge at the time of the search, his testimony establishes he was aware defendant was on parole.  Specifically, Officer Weidner testified that the dispatcher told him defendant was on parole and that he confirmed that information by reviewing the results of a records check on his in-car computer.  Police officers in the field may act based on "information furnished to them by other officers." (*Remers v. Superior Court* (1970) 2 Cal.3d 659, 666 (*Remers*).)  When one officer "furnishes to another officer information which leads to an arrest," the *Harvey/Madden* rule requires the People to "show the basis for the former officer's information." (*Id*. at p. 667.)  The first officer is not required "to testify as to how he or she received the information transmitted." (*People v. Johnson* (1987) 189 Cal.App.3d 1315, 1320 (*Johnson*).)  "To the contrary, the *Harvey/Madden* rule merely precludes the prosecution from relying on hearsay information communicated to the arresting officer that is not sufficiently specific and fact based to be considered reliable." (*People v. Gomez* (2004) 117 Cal.App.4th 531, 541 ["There is no requirement that the officer whose personal observations were relied upon for purposes of the probable cause determination actually

6

testify to his or her observations."].)  Thus, the prosecution may rely "on circumstantial evidence proving that the information transmitted to the [arresting officer] must have come from some source outside the police department."  (*Johnson*, *supra*, at p. 1320.)

The purpose of the *Harvey/Madden* rule is to prevent "the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer."  (*People v. Madden*, *supra*, 2 Cal.3d at p. 1021.)  Put differently, the rule ensures that " 'the source of the information is something other than the imagination of an officer who does not become a witness.' "  (*Remers*, *supra*, 2 Cal.3d at p. 666.)  The rule applies not only to arrests, but also to searches and detentions. (*People v. Harrison* (1988) 199 Cal.App.3d 803, 812 [searches]; *In re Eskiel S.* (1993) 15 Cal.App.4th 1638, 1643 [detentions].)

Here, Officer Weidner relied on hearsay information--namely, what the dispatcher told him and the results of a records check--for his belief that defendant was on parole. Accordingly, the *Harvey/Madden* rule required the People to prove that there was a reasonably reliable basis for the information that defendant was on parole.  As the People maintain, the probation records admitted into evidence at the suppression hearing, showing that defendant's supervision terminated on January 20, 2014, satisfied that burden.

The *Harvey/Madden* rule frequently comes into play where one officer tells the arresting officer an arrest warrant exists.  In that circumstance, "[t]he most direct way of proving police [did] not manufacture probable cause . . . is production of that warrant or a certified copy."  (*People v. Armstrong* (1991) 232 Cal.App.3d 228, 245.)  Here, the most direct way of proving police did not manufacture a justification for the search is production of records showing defendant was on parole.  The People produced such records.

Defendant stresses that there was evidence--in the form of a somewhat cryptic stipulation--that the records were incorrect and defendant had been discharged from parole. But, with respect to the alleged *Harvey/Madden* violation, the stipulation supports the People by confirming that "the system" showed defendant remained on parole. Thus, it provides circumstantial evidence that the information precipitating the search was not manufactured within the police department. Moreover, Officer Weidner did not hear from the dispatcher that the records might be misleading until after searching and arresting defendant. Because "the reasonableness of a warrantless search must be determined from the circumstances known to the officer at the time of a search," that additional, post hoc information is irrelevant. (*People v. Hoeninghaus*, *supra*, 120 Cal.App.4th at p. 1190.) As to whether defendant was in fact on parole, as noted, the record, " 'view[ed] . . . in the light most favorable to the trial court's ruling,' " establishes that he was. (*People v. Davis*, *supra*, 36 Cal.4th at p. 528.)

There is no evidence as to whether Officer Weidner was aware that defendant--who was paroled in Tennessee, not California--was subject to a search condition. But, because defendant has never raised that issue, we consider it forfeited. (*People v. Robinson* (2005) 37 Cal.4th 592, 652, fn. 33 [claim not raised below is forfeited on appeal]; *People v. Bryant*, *Smith and Wheeler* (2014) 60 Cal.4th 335, 419 [contention not raised in the opening brief is forfeited].)

**III.  DISPOSITION**

The judgment is affirmed.

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.


_____
Elia, J.