Filed 5/10/16  P. v. Do CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>HOAN VAN DO,<br><br>   Defendant and Appellant. | H041759 & H042461<br>(Santa Clara County<br> Super. Ct. No. C1472627) |

Defendant Hoan Van Do appeals from the judgment of conviction entered following his plea of no contest to cultivation of marijuana.  On appeal, defendant contends that the trial court erred in denying his Penal Code section 1538.5 motion to suppress evidence, and he alternatively asserts that the trial court erred in issuing a restitution award.  As set forth below, we conclude that the trial court erred in denying defendant's suppression motion, and we will reverse.

### PROCEDURAL HISTORY

An information, filed on May 8, 2014, charged defendant with cultivation of marijuana (Health & Saf. Code, § 11358; count 1), possession of marijuana for sale (Health & Saf. Code, § 11359; count 2), and theft of utility services (Pen. Code, § 498, subds. (b), (d); count 3).

On June 17, 2014, defendant filed a motion to suppress evidence pursuant to Penal Code section 1538.5.  The trial court denied the motion on July 25, 2014.

On August 4, 2014, defendant pleaded no contest to count one, cultivation of marijuana. Pursuant to the plea agreement, counts two and three were dismissed, and defendant entered a *Harvey*[1] waiver by which he agreed to pay restitution on the dismissed count of theft of utility services.

At the sentencing hearing on October 31, 2014, the trial court suspended imposition of sentence and placed defendant on probation for a period of three years. The trial court ordered defendant to pay restitution to Pacific Gas and Electric, but it reserved determination of the amount for a later hearing. At a hearing on January 16, 2015, the trial court ordered defendant to pay $82,742.01 as restitution to Pacific Gas and Electric.

## DISCUSSION

Defendant contends that the judgment must be reversed because the trial court erred in denying his motion to suppress evidence. Specifically, he asserts that a warrantless entry into his home was unlawful, and that all evidence seized during the search of his home therefore should have been suppressed. Defendant alternatively asserts that the restitution award must be stricken because it was "based on speculation."

The Attorney General contends that the search of defendant's home was lawful because the warrantless entry was justified by the emergency aid exception to the warrant requirement. The Attorney General also asserts that the restitution award was proper.

As explained below, we conclude that the warrantless entry into defendant's home was not justified by the emergency aid exception to the warrant requirement, and that the search of defendant's home was unlawful. We accordingly will reverse the judgment of conviction.[2]

---

[1] *People v. Harvey* (1979) 25 Cal.3d 754.
[2] Given our conclusion that the judgment must be reversed due to the unlawful search, we need not address defendant's claim regarding the restitution award.

**I.** *Background:  Proceedings Below*

> **A.** *The Suppression Motion*

Defendant filed a motion to suppress evidence pursuant to Penal Code section 1538.5.  The motion sought suppression of all evidence, all observations, and "any other fruits" derived from a warrantless search of 3052 Monkton Court in San Jose.  The motion specifically sought suppression of "256 pounds of marijuana plants" seized during the search.  The prosecution opposed defendant's suppression motion.

> **B.** *The Evidence Presented at the Hearing*

The trial court held an evidentiary hearing on the suppression motion.  San Jose Police Officer Charles Mathis was the only witness at the hearing.

Officer Mathis testified that he was on patrol on the morning of December 11, 2013.  Officer Mathis explained that, around 10:00 a.m., he was dispatched to a "welfare check" involving a "possible hostage situation" at 3052 Monkton Court.  The dispatcher advised as follows:  "It's a welfare check at 3052 Monkton Ct. . . . .  RP is calling from Massachusetts, wants a wel[fare] check on his sister at this property.  I guess she found out that the resident that lives there has a cocaine business inside the house and they won't let her leave.  Fears that when PD arrives, they may kill the sister per the resident that told her that if we're called 'It will go bad for her.'  Sister is a Hao Nguyen, also known as Kathy, Asian female, 43 years old, 5'4" 120 with black hair.  And that the cocaine is grown in the basement of the residence.  Unknown how many people are inside the residence.  And the renter name will be a 'Hoan' unknown last name.  He's an Asian male, 62 years old."  The computer-aided dispatch log, which Officer Mathis read on a computer in his patrol car, stated that Kathy Nguyen went to check on her property, she discovered that the "renter" had a cocaine business inside the house, the renter would not let Nguyen out of the house, and the renter told Nguyen to "keep quiet" and "just charge us more rent."

3

Officer Mathis was part of a group of four or five officers that arrived at the residence located at 3052 Monkton Court. When he arrived, Officer Mathis saw defendant and a woman standing in the driveway of the residence. Defendant matched the description of the renter that the dispatcher had provided, and the woman matched the description of Kathy Nguyen that the dispatcher had provided. Officer Mathis approached defendant and the woman, and he spoke with them in the driveway. Within a minute of contacting defendant, Officer Mathis identified defendant as Hoan Do, the person renting the residence. It took Officer Mathis "a couple minutes" to determine that the woman in the driveway was Kathy Nguyen, the landlord.

As Officer Mathis spoke with defendant and Nguyen, he noticed that Nguyen looked "very nervous" and "[f]earful of the suspect, as well as what may be in the house." Nguyen informed Officer Mathis that she did not know whether anyone was inside the residence. Nguyen also told Officer Mathis that she was "not being held hostage."

Officer Mathis pat-searched defendant, but he did not find any weapons. Officer Mathis asked defendant, in English, if there were people inside the house, if anyone inside the house was hurt, and what was inside the house. Defendant did not respond to the questions. Given that defendant was "able to identify himself fine," Officer Mathis was unsure whether there "was a language barrier" or whether defendant "was refusing to answer" the questions. Officer Mathis "ended up calling" a Vietnamese interpreter to help him speak with defendant.

Officer Mathis noticed that the house's exterior garage door was open, and he saw that the "interior garage door had a padlock from the outside," a circumstance that Officer Mathis described as "uncommon." Officer Mathis could not see inside the house through its windows because all of the house's windows "seemed to be covered with different materials." Officer Mathis saw that "the power wires coming into the house had

4

been disturbed." He testified that, based on his training and experience, such disturbed power wires are "a common element in all grow houses."

Officer Mathis testified that he had previously "encountered armed suspects" in grow houses. He explained that "in any grow-house situation, patrol officers are trained to treat them as potentially very violent encounters."

Five to 10 minutes after Officer Mathis first spoke with defendant and Nguyen, Officer Mathis approached the house's front door. The front door was "partially open," and Officer Mathis "noticed there was an odor of marijuana coming from the residence." Officer Mathis "yell[ed] inside to see if anyone was in there," but "no one answered." Officer Mathis testified that he "didn't know" if there were "other victims or suspects in the house." Officer Mathis and other officers entered the residence "looking for any potential suspects or other victims." The officers performed a "high-risk building search" in which they "slowly" and "methodically" searched the residence "looking for suspects." The officers did not find anyone inside the house. Officer Mathis testified that, during the search, the officers saw marijuana plants "in plain view." The officers seized approximately 250 pounds of marijuana plants.

On cross-examination, Officer Mathis testified that he knew the 911 caller was calling from Massachusetts and therefore was not inside the residence located at 3052 Monkton Court. He further testified that dispatch provided descriptions of only two people—the renter and the landlord—involved in the situation at 3052 Monkton Court. Officer Mathis admitted that he was "never given any information that there were any other potential victims of any crime . . . other than Kathy Nguyen."

The Attorney General asserts that Officer Mathis "saw marijuana plants" inside the house before he pushed open the front door and entered the house. Officer Mathis gave conflicting testimony on this matter. He first testified the he could see marijuana plants inside the residence while he stood at the partially-open front door. He later

5

testified that he saw marijuana plants after he "pushed the door open further." Ultimately, Officer Mathis testified that he did not recall whether he saw the marijuana plants before or after he pushed open the front door.

### C. *The Parties' Arguments and the Trial Court's Ruling*

The prosecutor argued that the search of the house was lawful because entry into the home was justified by the emergency aid exception to the warrant requirement. The prosecutor asserted that the evidence showed the officers entered the home to "protect potential victims inside and secure the scene."

Defense counsel pointed out that the "single issue before the court" was "whether the emergency aid exception justified the officer's entry into [defendant's] home," and she argued that the emergency aid exception did not justify the entry. Defense counsel emphasized that "the idea that there were other people in the house that were being held hostage . . . is based merely on speculation."

The trial court denied defendant's motion to suppress evidence, explaining: "I think the emergency exigent circumstances certainly justify the officer doing . . . his best to determine if there are other individuals in need of assistance or other suspects present in the house; and, therefore, he did not act unreasonably under the Fourth Amendment. So I'm going to deny the motion." The trial court noted that the 911 caller's assertion that "they" were threatening Nguyen and holding Nguyen hostage "clearly implies potential multiple persons inside" the home.

## II. *The Search Was Unlawful*

### A. *Standard of Review*

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found,

the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

**B.** *Legal Principles*

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is settled that warrantless searches are per se unreasonable unless they come within an established exception to the warrant requirement." (*People v. Hoeninghaus* (2004) 120 Cal.App.4th 1180, 1184.)

"It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' [Citation.] And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest." (*Welsh v. Wisconsin* (1984) 466 U.S. 740, 748; see also *People v. Celis* (2004) 33 Cal.4th 667, 676 (*Celis*).) A warrantless entry into a home is presumptively unreasonable, but this presumption "can be overcome by a showing of one of the few 'specifically established and well-delineated exceptions' to the warrant requirement." (*Celis, supra,* 33 Cal.4th at p. 676.)

Under the emergency aid exception to the warrant requirement, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." (*Brigham City v. Stuart* (2006) 547 U.S. 398, 403; see also *Michigan v. Fisher* (2009) 558 U.S. 45, 47.) A warrantless entry into a home is authorized by the emergency aid exception if officers have an "objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury." (*Brigham City v. Stuart,* supra, 547 U.S. at p. 400.) "The ' "emergency aid exception" ' to the warrant requirement 'does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises.' [Citation.] Rather, the exception 'requires only "an

7

objectively reasonable basis for believing" [citation] that "a person within [the house] is in need of immediate aid." ' [Citation.]" (*People v. Troyer* (2011) 51 Cal.4th 599, 605.)

### C. *The Emergency Aid Exception Did Not Justify the Warrantless Entry*

The issue before this court is whether the officers' warrantless entry into defendant's home was justified by the emergency aid exception to the warrant requirement. Thus, we must determine whether the officers had an objectively reasonable basis for believing that someone inside the house was seriously injured or imminently threatened with such injury.

There was not an objectively reasonable basis for believing that someone inside the home was seriously injured or imminently threatened with such injury. The 911 caller reported that *one* person, Kathy Nguyen, was possibly being held hostage at 3052 Monkton Court. The dispatcher relayed the information about this *one* potential hostage to officers. Within minutes of his arrival at 3052 Monkton Court, Officer Mathis confirmed that the woman standing in the driveway was Kathy Nguyen, and Nguyen told Officer Mathis that she was "not being held hostage." Given that the one possible hostage described by the 911 caller was standing in the driveway and not being held hostage inside the home, it was not objectively reasonable for officers to believe that someone inside the home was in need of immediate aid. Other evidence bolsters our conclusion that it was not objectively reasonable for officers to believe that someone inside the home was in need of immediate aid: Officer Mathis admitted that he was "never given any information that there were any other potential victims of any crime . . . other than Kathy Nguyen," Officer Mathis testified that he knew the 911 caller was calling from Massachusetts and therefore was not inside the home, Nguyen never told officers that there was another possible victim or hostage inside the house, and no one responded when Officer Mathis yelled into the house through the open door. On this record—which reveals that the one possible victim of the reported hostage situation was

8

safely outside of the home and not being held hostage inside the home—there was not an objectively reasonable basis for believing that someone inside the home was seriously injured or imminently threatened with such injury. The emergency aid exception to the warrant requirement therefore did not justify the officers' warrantless entry into the home.

The Attorney General contends that the emergency aid exception authorized the warrantless entry because "Officer Mathis had an 'objectively reasonable basis for believing that someone in the house was injured or in danger' [citation], or that someone was lying in wait to attack Kathy after the officers left." This argument is unpersuasive.

We first address the Attorney General's contention that Officer Mathis had an objectively reasonable basis for believing that someone inside the house was injured or in danger. To support this argument, the Attorney General makes the following factual assertion: "Officer Mathis had . . . no prior information indicating that only one victim was at risk in the reported hostage situation." The Attorney General's factual assertion is completely belied by the record. As we have explained, the 911 caller reported one possible hostage named Kathy Nguyen, the dispatcher described one possible hostage named Kathy Nguyen, and Officer Mathis admitted that he was "never given any information that there were any other potential victims of any crime . . . other than Kathy Nguyen." Given the faulty factual premise of the argument, the Attorney General has failed to show that Officer Mathis had an objectively reasonable basis for believing that someone inside the house was injured or in danger.

We now address the Attorney General's contention that Officer Mathis had an objectively reasonable basis for believing that someone inside the house was lying in wait to attack Kathy after the officers left. In support of this argument, the Attorney General asserts that the evidence suggested that defendant was "not alone" in victimizing Kathy

9

Nguyen. In particular, the Attorney General emphasizes that the 911 caller used "the word 'they' multiple times to refer to Kathy's assailants."

We agree that the 911 caller's use of the word "they" suggested that there could have been another person inside the house who was working in concert with defendant. However, contrary to the Attorney General's contention, the circumstance that there might have been someone inside the house who wanted to attack Kathy is irrelevant to our analysis of the emergency aid exception. Under the emergency aid exception, police officers may enter a home without a warrant when they have an "objectively reasonable basis to believe someone *inside* is seriously injured or imminently threatened with such injury." (*People v. Gemmill* (2008) 162 Cal.App.4th 958, 960, italics added.) According to the Attorney General's lying in wait theory, no one inside the house was seriously injured, and no one inside the house was imminently threatened with serious injury. Rather, under the Attorney General's theory, an attacker was waiting inside the house while Kathy—who was *outside* of the house—was in possible danger. The emergency aid exception does not permit officers to enter a home when the one person in potential danger is outside of the home. The Attorney General has thus failed to show that the emergency aid exception authorized the warrantless entry into the home.

In sum, the emergency aid exception to the warrant requirement did not authorize the officers' warrantless entry into the home. The Attorney General does not proffer any other exception to the warrant requirement that could have authorized the warrantless entry, and we are aware of none. We therefore must conclude that the officers unlawfully entered the home, and all evidence obtained as a result of that entry should have been suppressed. The trial court erred in denying defendant's motion to suppress evidence, and we accordingly reverse the judgment of conviction.

**DISPOSITION**

The judgment is reversed.

10

_____
RUSHING, P.J.

WE CONCUR:


_____
MÁRQUEZ, J.


_____
GROVER, J.

11